**MOBIL OIL CORPORATION,**
Plaintiff-Appellee,

v.

**DEPARTMENT OF ENERGY and James
B. Edwards, Jr., Secretary of Energy,**
Defendants-Appellants.

No. 5–67.

Temporary Emergency Court of Appeals.

Argued March 5, 1982.

Decided April 29, 1982.

Robert C. Power, Dept. of Energy, Washington, D. C., with whom John P. McKenna, Larry P. Ellsworth, and David A. Engels, Dept. of Energy, Washington, D. C., were on the briefs, for defendants-appellants.

Thomas R. Trowbridge, III, New York City, with whom Donovan, Leisure, Newton & Irvine, Andrew J. Kilcarr, Daniel Bukovac, of Washington, D. C.; John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex.; and Charles S. Lindberg and William C. Streets (of counsel), Fairfax, Va., were on the brief, for plaintiff-appellee.

William H. Bode, Alfred Lawrence Toombs and John E. Varnum, Batzell, Nunn & Bode, Washington, D. C., were on the brief for amici curiae, Dixie Oil Co., et al.

Before JAMESON, DUNIWAY and ZIRPOLI, Judges.

JAMESON, Judge:

The Department of Energy (DOE) has appealed from an order enjoining the DOE from enforcing against Mobil Oil Corporation (Mobil) a regulation adopted on January 16, 1981 which retroactively repromulgated a Mandatory Petroleum Price Regulations amendment promulgated on April 30, 1974, which this court held invalid in *Mobil Oil Corporation v. DOE*, 610 F.2d 796 (TECA 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980) (*Mobil I*), reaffirmed in *Mobil Oil Corporation v. DOE*, 647 F.2d 142 (TECA 1981) (*Mobil II*).

## I. Regulatory Background

### A. The "V Factor"

Separate mandatory price controls for petroleum and petroleum products were first implemented under Phase IV regulations adopted by the Cost of Living Council (CLC) on August 19, 1973, under authority of section 203(a)(1) of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note. The price rules provided, *inter alia*, that a refiner could charge the weighted average May 15, 1973 selling price for a particular product, plus increases to reflect increased product (crude oil) and nonproduct (marketing and operating) costs incurred since May, 1973. 6 C.F.R. § 150.355 (1974).

In order to determine the maximum lawful price for each refined product, it was necessary to develop a regulatory mechanism which allocated the total increased crude oil costs among the various products. Volumetric apportionment, i.e., the "V factor", was adopted, which established for each product a fraction of the increased crude oil costs which the refiner could pass on to a particular product or product category. The numerator of the fraction was the total volume of the covered product or product category sold in a specified time period. The denominator was the total volume of all covered products sold in the same period.

The CLC cost apportionment regulations covered both "special products" (gasoline, No. 2 diesel fuel and No. 2 heating oil) and all other products, referred to collectively as "covered products other than special products." Thus, all refined crude oil products were regulated under the ESA.

The regulations specifically prohibited refiners from allocating any costs volumetrically attributable to "covered products other than special products" to "special products." Each "special product" could bear only its volumetrically proportionate share of crude oil costs. 6 C.F.R. § 356(c)(1)(i) (1974). Among "covered products other than special products," however, costs could be apportioned to whichever of those products the refiner deemed appropriate. 6 C.F.R. § 150.356(c)(1)(ii) (1974).

### B. The April 30, 1974 Amendment

Volumetric apportionment was continued under the regulations adopted by the DOE, the CLC's successor,[1] when the ESA was succeeded by the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 751 *et seq.* The EPAA exempted from regulation certain products previously regulated under the ESA, namely petroleum coke, petroleum wax, asphalt, road oil, and refinery gas (i.e., refinery residue).[2]

In anticipation of the expiration of the ESA on April 30, 1974, the DOE amended its regulation on April 3, 1974 to exempt the products not covered by the EPAA from the coverage provisions of the agency's regulations. 39 Fed.Reg. 12353 (April 15, 1974) (codified at 10 C.F.R. §§ 210.34 and 212.31 (1974)). The agency neglected to consider the effect of this exemption on the V factor, however, which continued to refer only to the total volume of "covered products sold" in its denominator. Since the exempt products were no longer "covered products" and since the fraction was multiplied by *all* increased crude oil costs to determine the allowable price increase for each covered product, increased costs attributable to the exempt products could be passed through in the prices of covered products.[3]

---

1. The Department of Energy and its predecessors, including the Federal Energy Administration and the Federal Energy Office, will be referred to collectively as "the DOE".

2. The EPAA required allocation and pricing of "all crude oil, residual fuel oil, and refined petroleum products." 15 U.S.C. § 753(a). Refined petroleum products were defined as "gasoline, kerosene, distillates (including number 2 fuel oil), LPG, refined petroleum oils, or diesel fuel." *Id.* § 752(5).

3. In theory, this could allow a refiner to recover twice for a cost increase attributable to the exempt products. First, the increase could be passed through in the price of covered products. In addition, the price of the exempt products, which were not price controlled, could be increased to whatever the market would bear.

The DOE, believing that the EPAA did not allow this treatment, promulgated an amendment on April 30, 1974 which modified the volumetric apportionment formula. 39 Fed.Reg. 15139 (May 1, 1974) (codified at 10 C.F.R. § 212.83(c)(2) (1974)) (1974 amendment).[4] The amendment redefined the denominator of the V factor as "the total volume of all covered products *and all products refined from crude petroleum other than covered products....*" *Id.* (emphasis added). Refiners were thereby prohibited from apportioning to the price of covered products any crude oil cost increases volumetrically attributable to the five exempt products.[5]

C. *February 1, 1976 Amendment to EPAA and Subsequent Rulemakings*

Effective February 1, 1976, the EPAA was amended in several respects by the Energy Policy and Conservation Act (EPCA), 94th Cong. 1st Sess. Pub.L. 94–163, 89 Stat. 871 (1975), (codified in scattered sections 5, 10, 15, 30, 42, 50 U.S.C.). Following the enactment of the EPCA, the DOE issued a Notice of Proposed Rulemaking, 41 Fed.Reg. 1680 (January 9, 1976), which, in addition to proposing several amendments required by the EPCA, proposed to replace the V factor, which was based on the volume of products sold, with the "R factor", a

formula based on the volume of products refined. The rulemaking resulted in an amendment to the refiner pricing rules which permitted refiners to allocate increased crude oil costs through either the V factor (as amended) or the R factor. 41 Fed.Reg. 5111 (February 4, 1976) (1976 Amendment).

With additional volumes of petroleum products being exempted from price controls, the V factor was perceived to cause significant price distortions, and the DOE eventually proposed to eliminate it entirely. 41 Fed.Reg. 31863 (July 30, 1976). Finally, in January, 1977, the DOE abolished the V factor as of March 1, 1977, and required all refiners to utilize the R factor in calculating the crude oil costs which could be passed through in prices charged for covered products. 42 Fed.Reg. 5027 (January 27, 1977).

III. *Prior Proceedings in this Case*

A. *Mobil I*

As set forth in *Mobil I*, after promulgation of the April 30, 1974 amendment, Mobil filed a request for exception relief, claiming that adverse market conditions for its most plentiful exempt product, petroleum coke, prevented it from recovering the increased product costs allocable to that product under the V factor.[6] Its request was denied, as were a second request and appeals from

---

See 46 Fed.Reg. 7777 (January 23, 1981). Aside from pointing out this theoretical possibility, however, the DOE has not shown that any refiner actually obtained this duplicate recovery. *Id.*

**4.** The amendment was promulgated without prior notice or opportunity to comment because the DOE believed the midnight April 30, 1974 expiration date for the ESA created an "emergency situation". 39 Fed.Reg. 15139 (May 1, 1974).

**5.** Mobil contends that the April 30, 1974 amendment was not the only possible response to the decontrol of the exempt products. Rather, argues Mobil, the DOE had three options. First, the agency might have determined that no costs are properly attributable to refinery residue because of its inherently low value, a view supported by several commentators. The April 3, 1974 amendment, without the April 30 amendment, would have accomplished that result. Second, the agency might have passed only a limited portion of cost increases on to

exempt products, adopting a scheme which allowed refiners to recover all of, but not more than, their costs. The third option was that taken by the DOE, which attributed costs to the exempt products on a full volumetric basis. Mobil argues that economic considerations, n.6, *infra*, required one of the first two options.

**6.** Petroleum coke is suitable for mixing with coal, to be burned as fuel by electric utilities. Mobil argues that petroleum coke therefore competes with coal rather than other petroleum based sources of energy, and on a volumetric basis, its value has no relationship to that of the primary products of the refinery process. Because of this lower value, petroleum coke cannot be sold at a price which supports cost increases proportionate to its percentage of a refiner's sales. This view is strongly supported by other refiners. 46 Fed.Reg. 7777 (January 23, 1981). This disparity had little significance prior to the April, 1974 amendments, because increased costs could be recouped on the other products in the "covered products other than a

each of the denials. See *Mobil I*, 610 F.2d at 800.

Mobil then brought this action seeking declaratory relief. Following extensive discovery and cross-motions for summary judgment, the district court granted Mobil's motion, finding the April 30, 1974 amendment both substantively and procedurally invalid. The court also found that the DOE's denials of Mobil's requests for exception relief were arbitrary and capricious.[7]

On appeal this court concluded that "the district court did not err when it found the challenged amendment . . . promulgated on April 30, 1974 null and void as being arbitrary and capricious and beyond the agency's authority.[8] Likewise, the district court did not err when it found that the agency did not comply with the requirements of § 4 of the APA, 5 U.S.C. § 553, thus rendering the amendment procedurally invalid." 610 F.2d at 805.[9]

While holding that the "challenged amendment was never validly promulgated, either substantively or procedurally," this court in *Mobil I* recognized that the judgment of the district court apparently entitled "Mobil to reallocate costs continuously from April 1974 up to the present." The court agreed with the DOE that this was "incorrect". The judgment was "affirmed as modified" and remanded for further findings to eliminate a potential conflict with an amendment in the EPCA, enacted in December, 1975, adding § 4(b)(2)(D) to the EPAA, 15 U.S.C. § 753(b)(2)(D).

### B. *Mobil II*

On remand the district court added to its conclusions of law a paragraph recognizing the 1975 EPAA amendment and modifying a paragraph of the judgment to incorporate the language of § 753(b)(2)(D):

> At all times since April, 1974, Mobil Oil Corporation has been and is entitled to allocate increased crude oil costs to products regulated by defendants; provided, however, that nothing in this judgment shall permit, from February 1, 1976 forward, more than a direct proportionate distribution (by volume) to Number 2 oils (Number 2 heating oil and Number 2-B diesel fuel), aviation fuel of a kerosene or naphtha type, and propane produced from crude oil, of any increased costs of crude oil incurred by Mobil.

The DOE appealed again, contending that the judgment should be modified further "to limit the regulated price pass-through of crude oil costs attributable to the five products exempted by April 30, 1974 (a) to the period prior to February 1, 1976 and (b) costs not recouped by Mobil in its prices for these five products."

In *Mobil II* this court concluded:

> We reaffirm the prior holdings of this court that (1) the amendment to the Mandatory Petroleum Price Regulations promulgated on April 30, 1974 is null and void, and (2) the judgment is correct insofar as it permits Mobil to allocate exempt product costs to covered products for the period prior to February 1, 1976. We hold that the revised judgment, incorporating the provisions of § 4(b)(2)(D) of the EPAA, as amended, complied with the direction of the prior opinion for modification of the judgment to avoid possi-

---

special product" category. After the 1974 amendment, however, cost increases volumetrically attributable to refinery residue could only be recovered in the prices of the lower value exempt products. Mobil claims it would have had to triple the price of its petroleum coke to recover those costs. Since the market could not bear that increase, Mobil was forced to absorb 75 million dollars of loss in 1974 and 1975 alone. *Mobil I*, 610 F.2d at 800, n.4.

7. The findings and conclusions of the district court and the DOE's contentions on the first appeal are set forth in detail in *Mobil I*.

8. Specifically this court held in *Mobil I* that the "agency neglected to fulfill its statutory command when it promulgated the [April 30, 1974] amendment without considering the Act's objectives. As such, the DOE's action was beyond its statutory authority." 610 F.2d at 802.

9. The court did "not decide the issue of whether the agency's denials of exception relief were arbitrary and capricious and unsupported by substantial evidence." *Id.* at 805.

ble conflict with the statute. On this basis we affirm the judgment, as modified by the district court, but express no opinion with respect to the validity and effect of the February 1, 1976 regulations or other subsequent regulations. 647 F.2d at 146–47.[10]

### IV. *The January 16, 1981 Amendments*

On August 28, 1980, the DOE issued a Notice of Proposed Rulemaking, 45 Fed. Reg. 58871 (Sept. 5, 1980), which proposed the adoption of amendments repromulgating each of the crude oil cost apportionment regulations in effect from 1974 to 1980, including the 1974 amendment invalidated in *Mobil I*[11] and the rules imposed by the 1976 and 1977 rulemakings. After receiving comments and conducting a hearing,[12] DOE adopted the proposed amendments.[13] 46 Fed.Reg. 7776 (January 23, 1981). The DOE rejected each of the legal objections to the rulemaking, including whether *Mobil I* and *Mobil II* precluded adoption or enforcement of these regulations. Concluding that the retroactive adoption of the amendments would best further the purposes of the EPAA, they were given both retroactive and prospective effect.

**10.** This court noted in *Mobil II* that *Mobil I* "did not mandate a consideration of subsequent regulations; and the record before this court is not adequate to review the February 1, 1976 regulations, either as to substance or procedure." 647 F.2d at 146.

**11.** The DOE gave notice that it "would retroactively impose to April 30, 1974 the volumetric apportionment requirement ... which was subsequently ruled invalid." 45 Fed.Reg. 58873 (Sept. 5, 1980).

**12.** The industry's comments in response to the proposed rulemaking were overwhelmingly negative, with many of the refiners alleging that the rule prevented them from fully recovering their costs. 46 Fed.Reg. 7776 n.4, 7777 (January 23, 1981).

**13.** The *Mobil II* court was aware of this rulemaking. 647 F.2d at 146. While the validity of the rulemaking was not addressed in *Mobil II*, the court noted that, "Presumably the validity and effect of the 1980 rulemaking will be tested in another action." *Id.* at 146 n.9.

**14.** The order of the district court reads in pertinent part:

### V. *Motion for Injunctive Relief*

On May 4, 1981, after *Mobil II* was decided, Mobil filed a motion, pursuant to 28 U.S.C. § 2202 (1976), to enjoin the DOE from enforcing its January 16, 1981 repromulgation of the April 30, 1974, amendment "or from taking any other action inconsistent with the [district] court's judgment of July 22, 1980."

On September 21, 1981, the district court granted Mobil's motion, enjoining the DOE "from applying the January 18, 1981 'V factor' amendments against Mobil, and from taking any other action against Mobil inconsistent with the prior orders in this case."[14] On October 8, 1981, an order was entered clarifying the court's prior order to enjoin application of the "1981 'V factor' amendments against Mobil for the entire period from April 30, 1974 through January 28, 1981."

### VI. *Issues on Appeal*

Two primary issues are presented on this appeal:

(1) whether the DOE may repromulgate retroactively to *April 30, 1974*, the regulation held invalid by this court in *Mobil I*, as reaffirmed in *Mobil II*; and

> DOE is attempting, through retroactive application of regulations promulgated January 18, 1981, to effectively reinstate regulations found in an earlier order of this Court, per Fisher, J., to be *procedurally and substantively defective.* The Temporary Emergency Court of Appeals affirmed this Court's invalidation of the April 30, 1974, regulations on procedural grounds, clearly precluding retroactive application of the January 18, 1981, repromulgated amendments to transactions that occurred during the period from April 30, 1974, to February 1, 1976, (when DOE argues that it validly repromulgated the April 30, 1974 amended "V factor" rule). Although TECA's opinions did not review this Court's substantive grounds for invalidating the April 30, 1974 amended rule, leaving this Court free to reconsider its ruling on those grounds, this Court declines to do so. See *Martin v. Henly,* 452 F.2d 295, 300 (9th Cir. 1971).

The order of the district court refers to the January 18, 1981 amendments. The effective date of the amendments, however, was January 16, 1981.

(2) whether the district court properly enjoined enforcement to January 28, 1981, of the *February 1, 1976* and subsequent amendments to the regulations.

As noted *supra*, this court in *Mobil I* affirmed the holding of the district court that the *April 30, 1974* amendment was null and void, but remanded for consideration of the effect of the 1975 amendment to the EPAA and regulations adopted pursuant thereto. *Mobil II* reaffirmed the holding that the April 30, 1974 amendment was null and void and that Mobil could "allocate exempt products to covered properties for the period prior to *February 1, 1976.*" 647 F.2d at 147. Neither *Mobil I* nor *Mobil II* passed on the validity of the February 1, 1976 and subsequent amendments. Now the DOE argues that the January 16, 1981 regulations, repromulgating all prior amendments, are retroactive to April 30, 1974, while Mobil argues that the district court properly enjoined the application of the 1981 amendments through January 28, 1981. We cannot agree with either party and hold that the DOE may not repromulgate the amendments retroactively to April 30, 1974, but that the DOE may enforce prospectively the February 1, 1976 and subsequent amendments.

### VII. *Retroactive Promulgation of a Previously Invalidated Regulation*

We recognize that administrative agencies have the authority, under limited circumstances, to issue retroactive rules. See,

e.g., *Standard Oil v. DOE*, 596 F.2d 1029, 1063 (TECA 1978); *General Telephone Co. of Southwest v. United States*, 449 F.2d 846, 863 (5 Cir. 1971); *Retail, Wholesale and Department Store Union v. N.L.R.B.*, 466 F.2d 380, 390 (D.C.Cir.1972). Although that authority is even more limited when the rule promulgated has previously been invalidated by a court,[15] retroactive remedial action has been allowed or even required when necessary to fulfill a statutory design.

In *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944), the Court held that the Administrator of the Wage and Hour Division had improperly defined the term "area of production", as used in § 13(a)(10) of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* The Court remanded the case to the district court "with instructions to hold it until the Administrator by making a valid determination of the area with all deliberate speed, acts within the authority given him by Congress." *Id.* at 619, 64 S.Ct. at 1222. The Court concluded that it would "do violence to the law as Congress wrote it," *id.*, to invalidate the statute without allowing the Administrator to retroactively redefine "area of production", thus "remodeling . . . the situation as nearly as may be to what it should have been initially . . . ." *Id.* at 620, 64 S.Ct. at 1222.[16]

*Atlantic Coast Line Railroad Co. v. Florida*, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451

---

**15.** See, *e.g., Cerro Metal Products v. Marshall*, 467 F.Supp. 869 (E.D.Pa.1979), *aff'd*, 620 F.2d 964 (3 Cir. 1980). There, the court had previously interpreted an Occupational Safety and Health Administration (OSHA) regulation to not allow *ex parte* applications for OSHA inspection warrants. OSHA subsequently amended the regulation to indicate that it thereafter *and there-to-fore* had been intended to allow *ex parte* warrants. While acknowledging that "an executive official vested by Congress with quasi-legislative authority [could alter] a statute or rule so that a judicial interpretation regarded as ill-conceived will have no future application", 467 F.Supp. at 879 (footnote omitted), the court held that "the Secretary cannot, by an interpretative rule of retrospective application, undo a prior judgment of a federal court." *Id.* Rather than remedy procedural defects in a previous action, as is allowed in limited circumstances, the OSHA

amendment directly contradicted the court's prior interpretation of the regulation and rendered its judgment null and void. Overriding precedent indicates that it was properly rejected. See, *e.g., McCullough v. Virginia*, 172 U.S. 102, 123–124, 19 S.Ct. 134, 141–142, 43 L.Ed. 382 (1898); *Daylo v. Administrator of Veteran's Affairs*, 501 F.2d 811, 816 (D.C.Cir.1974). The question before this court is whether the 1981 amendment falls within the narrow circumstances where retroactive rulemaking is allowable.

**16.** Inherent in the Court's conclusion was the assumption "that the Administrator will retrospectively act as conscientiously within the bounds given him by Congress as he would have done initially had he limited himself to his authority." 322 U.S. at 620, 64 S.Ct. at 1222.

(1935), considered a situation where freight charges had been collected by a railroad carrier in accordance with an order of the Interstate Commerce Commission (ICC). The order was later invalidated by the Court on the ground that the findings of the Commissioner were incomplete and inadequate. *Florida v. United States*, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291 (1931). The Commissioner had subsequently made new findings and issued the same order, which was confirmed by the Court. *Florida v. United States*, 292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. 1077 (1934). In the meantime, shippers had filed an action seeking restitution of part of the money paid while the first order was in force. The Court held that "[u]njust discrimination against interstate commerce, 'forbidden' by the statute," 295 U.S. at 312, 55 S.Ct. at 717, existed during the time of the first order, and that if "the processes of the law had been instantaneous or adequate, the attempt at correction would not have missed the mark." *Id.* So, although the first order was invalid due to "imperfections of form [and] slips of procedure", *id.*, the Court upheld the Commissioner's retroactive determination that the rates established in the first order were valid and enforceable.

*United States v. Morgan*, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211 (1939), presented a similar situation. An order of the Secretary of Agriculture fixing stockyards rates was set aside for procedural defects. While the Secretary was proceeding to fix the rates according to proper procedures, various marketing agencies sought distribution of a court established fund which contained the fees collected under the first order which exceeded the formerly scheduled rates. Rather than allow distribution of the entire fund, however, the Court held that the Secretary was "free to determine a reasonable rate for the period antedating any order he may now make." *Id.* at 192, 59 S.Ct. at 800. As in *Addison* and *Atlantic Coast Line*, the Secretary was allowed to retroactively determine proper rates for the

period of the first order because his inaction would instead allow "unjust and unreasonable" rates to control, contrary to the intent of the underlying statute. *Id.* at 196, 198, 59 S.Ct. at 802, 803.

In *Standard Oil, supra*, this court, in a different factual situation, affirmed the findings of two district courts that there was no basis for according retroactive effect to certain rules, stating that

> The validity of the agency action depends upon the "balance" between the "mischief of producing a result which is contrary to a statutory design or to legal and equitable principles" and "the ill effect of the retroactive application of a new standard."

Quoting from *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), 596 F.2d at 1063. In *McCulloch Gas Processing Corp. v. DOE*, 650 F.2d 1216 (TECA 1981), the court found portions of regulations adopted by the DOE arbitrary and capricious and therefore invalid. In holding that the district court erred "in excising specific language from the regulations and in effect rewriting the regulations", the court said in part:

> The restrictions found invalid here are an integral part of the regulations. The DOE's desire to limit passthrough of costs is rational, even if the particular restrictions are not. The DOE must be given the opportunity to rewrite the regulations with rational limitations based on its consideration of relevant factors. As the Supreme Court admonished in *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 619, 64 S.Ct. 1215, 1222, 88 L.Ed. 1488 (1944), "It is not for us to rewrite a definition. That is the Administrator's duty."

*Id.* at 1229–30.[17]

The DOE relies primarily upon the three decisions of the Supreme Court and this court's decision in *McCulloch* to support its "retroactive promulgation in 1981 of the

---

17. *Holly Hill* allowed retroactive promulgation because it was necessary to fulfill a statutory scheme. 322 U.S. at 619–20, 64 S.Ct. at 1222.

*McCulloch* allowed the DOE to rewrite "integral" parts of regulations to fulfill an otherwise "rational" desire of the DOE.

1974 amendment," arguing that the "present case is virtually undistinguishable from *Atlantic Coast Line R.R. Co. v. Morgan*". On the other hand, Mobil argues that the three Supreme Court cases "hold only that, once agency action is invalidated, the court should not permit a result which conflicts with the underlying statute," and that these cases "all involved circumstances where the judicial relief granted required the agency to take the action at issue."

We agree with Mobil that the three Supreme Court cases, as well as *McCulloch*, are factually distinguishable. We do not agree that an attempt by an agency to retroactively rewrite regulations without prior court approval makes a new rule invalid *per se*.[18] The "law should avoid retroactivity as much as possible", but should be flexible enough to avoid doing "violence to the law as Congress wrote it" and "producing a result contrary to statutory design." *Holly Hill*, 322 U.S. at 619–20, 64 S.Ct. at 1222.

Was the 1981 repromulgation of the 1974 amendment necessary to fulfill a statutory design, or would the failure to give retroactive effect to the 1981 amendment "do violence to the law as Congress wrote it?" The prior decisions in this case have given a negative answer.

The *Mobil I* panel specifically considered the objectives of the EPAA which were to be achieved by the Mandatory Petroleum Price Regulations. 610 F.2d at 801, 801 n. 6. Rather than finding that the 1974 amendment was required to fulfill a statutory design, the panel concluded that "the agency neglected to fulfill its statutory command when it promulgated the amendment without considering the Act's objectives." *Id.* at 802. In addition, the panel held that "the expiration of the ESA ... did not require the agency to amend its cost allocation formula." *Id.* at 803. As noted in *Mobil II*, "The prior panel of this court was well aware of the regulatory gap that existed as a result of the expiration of the ESA and the DOE's oversight in not changing the cost-allocation regulation in time. See, *e.g.*, 610 F.2d at 799, 803 and n. 8." 647 F.2d at 145 n. 8. Even so, neither panel felt compelled to require or expressly allow the DOE to fill in that gap.

As stated in *Mobil II*, "This court will not consider issues decided by the prior panel." *Id.* at 145. This court has twice considered the nature and necessity of the 1974 amendment, and in both cases, has failed to find a compelling reason to allow a retroactive repair of the regulations. Since the DOE has not shown that there will be a significant "mischief of producing a result contrary to a statutory design ...," *Standard Oil*, 596 F.2d at 1063, and since the absence of the 1974 amendment or a similar amendment does not necessarily "do violence to the law ...", we conclude that the retroactive repromulgation of the 1974 amendment is invalid.

The DOE and *amicus curiae*, Dixie Oil Co., argue that in any event the effect of the 1981 amendments is not subject to review until after Mobil challenges the amendments in a new action. In light of our interpretation of *Holly Hill* and its companion cases, and the failure of the DOE in *Mobil I, Mobil II*, or in this proceeding to show that the 1974 amendment was necessary to fulfill a statutory design, we conclude that the retroactive repromulgation in 1981 of the April 30, 1974 amendment is invalid as a matter of law. Nothing further needs to or can be added to the record; additional arguments will be of no benefit; and it would be both unnecessary and a waste of judicial resources to postpone the inevitable decision until a later appeal.

18. It is true that in the prior appeals in this case, the court agreed that "the opportunity to comment after promulgation cannot substitute for notice and an opportunity to comment beforehand." 610 F.2d at 804 n.9. That statement was later construed to mean that "the subsequent rulemakings, including the February 1, 1976 regulations did not validate the April 30, 1974 amendment." 647 F.2d at 146 n.11. This, however, did not include the 1981 amendments. While the 1976 and subsequent amendments could not by *implication* validate the 1974 amendment, the issue now before the court, is whether the *express* repromulgation of the 1974 amendment in 1981 is valid.

Therefore, we hold that the district court properly enjoined enforcement of the 1981 amendment for the period April 30, 1974 to February 1, 1976.

## VIII. *February, 1976 and Subsequent Amendments*

The district court enjoined the DOE "from applying the 1981 'V factor' amendments against Mobil for the entire period from April 30, 1974 through January 28, 1981."

It is clear from *Mobil I* that this court agreed with the DOE that the initial judgment in entitling "Mobil to reallocate costs continuously from April 1974 up to the present" was "incorrect." 610 F.2d at 804. On remand paragraph 8 of the judgment was amended to read in pertinent part:

> At all times since April 30, 1974, Mobil Oil Corporation has been and is entitled to allocate increased crude oil costs to products regulated by defendants; provided, however, that nothing in this judgment shall permit, from February 1, 1976 forward, more than a direct proportionate distribution (by volume) to [certain enumerated products] of any increased costs of crude oil incurred by Mobil.

As noted *supra*, the validity and effect of the February 1, 1976 and subsequent regulations, which were also repromulgated in the January, 1981 rulemaking, were not addressed by either the district court or this court in either *Mobil I* or *Mobil II*. See *Mobil II*, 647 F.2d at 146–47 and 146 n. 11.

On this appeal Mobil states that the "injunction must fairly be read as enjoining the January 16, 1981 action to the extent it was inconsistent with the court's judgment.

That judgment only invalidated the April 30 rule." Mobil brief at 8, n. 13.[19] The DOE interprets this statement as a "suggestion that the injunction should be read as simply not enjoining the 1976 and later amendments to the V factor, including the 1981 repromulgation of such amendments." The DOE finds "Mobil's proposed solution" acceptable and argues that "this court should indicate that the injunction either does not enjoin the 1976 and subsequent regulations (or their 1981 repromulgation) or that to the extent that it does, it is vacated."

The effect of the February 1, 1976 and subsequent regulations must be determined in the light of the judgment as amended following remand in *Mobil I*. That judgment did not invalidate the 1976 and subsequent amendments. While we hold that the January 16, 1981 regulations may not be applied retroactively to validate the April 30, 1974 amendment, we find nothing in the record on this appeal to prevent the DOE from enforcing prospectively the February 1, 1976 and subsequent regulations. We conclude accordingly that the injunction should be limited to the period April 30, 1974 to February 1, 1976.

Affirmed in Part and Remanded for Amendment of the Order in accordance with this opinion.

---

**19.** Mobil appeared to modify its position on this issue at oral argument. Counsel argued that because the record is still insufficient to review the February 1, 1976 and subsequent regulations, the DOE has not shown that those regulations redefined the denominator of the V factor to include the five exempt products.

Mobil misconstrues the respective responsibilities of the agency and the regulated industry. Once adopted, administrative regulations are considered valid and enforceable until they are successfully challenged in court. That challenge has not yet been made with regard to these later regulations.