**THRIFTWAY COMPANY,**
Plaintiff–Appellant,

v.

The **UNITED STATES DEPARTMENT OF ENERGY, et al.,**
Defendants–Appellees.

No. 10–78.

Temporary Emergency Court of Appeals.

Argued Nov. 14, 1988.

Decided Jan. 31, 1989.

William F. Cockrell, Jr., Law Offices of William F. Cockrell, Jr., Washington, D.C., Lawrence I. Abrams, Abrams, Westermeier, & Goldberg, P.C., Washington, D.C., were on the brief for plaintiff-appellant.

Thomas H. Kemp, Office of the Gen. Counsel, U.S. Dept. of Energy, Washington, D.C., with whom Henry A. Gill and Marc Johnston of the same office were on the brief for defendants-appellees.

Before CHRISTENSEN, WEIGEL and THORNBERRY, Judges.

WEIGEL, Judge.

Thriftway Company (Thriftway) appeals from the decision of the United States District Court for the District of New Mexico, granting summary judgment in favor of the Department of Energy (DOE) and upholding the decision of the Federal Energy Regulatory Commission (FERC). We affirm.

The decision of FERC, affirmed by the district court, upheld the ruling of the DOE's Office of Hearings and Appeals (OHA). FERC agreed that Thriftway did not qualify for additional relief by way of an exception from its obligation to purchase certain "entitlements" under the DOE's Old Oil Allocation Program (Entitlements Program).[1] 10 C.F.R. § 211.67.

Thriftway contends that DOE erred by including returns from Thriftway's grocery and sundry marketing activities in the relevant financial analysis for calculating the "exception" relief that was awarded Thriftway. Specifically, Thriftway claims that under the DOE's *"Delta–Beacon"* standards,[2] financial data from activities not

---

[1] The Entitlements Program has been described in several published opinions. *See Texaco, Inc. v. Department of Energy*, 795 F.2d 1021 (TECA 1986), *cert. dismissed Texaco, Inc. v. United States Department of Energy*, 478 U.S. 1030, 107 S.Ct. 10, 92 L.Ed.2d 766 (1986); *Husky Oil Company v. Department of Energy*, 582 F.2d 644 (TECA 1978); *Delta Refining Co. v. Federal Energy Administration*, 559 F.2d 1190 (TECA 1977). In brief summary:

The entitlements program was designed to remedy the economic distortions and inequities resulting from the pricing system for crude oil created by the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751–760h, as amended. Under the program, refiners had monthly "entitlements" to a certain number of barrels of inexpensive crude oil. If a refiner bought more of the inexpensive oil than was allowed by its monthly entitlements, the refiner was required to purchase additional "entitlements" to cover that amount from a refiner who did not use all of its monthly allotted entitlement to cheap crude oil. 10 C.F.R. § 211.67. Thus, certain refiners with greater access to inexpensive crude oil were required to purchase entitlements from those refiners with less access to the cheap oil. This system provided a mechanism for allocating the benefits of low cost crude oil equitably throughout the country.

Exception relief was established to remedy the serious adverse effects that entitlement purchase obligations were having on some small and independent refiners. *See* Section 504 of the Department of Energy Organization Act, 42 U.S.C. § 7194. DOE established an exceptions procedure whereby the OHA could grant exception relief to prevent special hardship, inequity, or unfair distribution of burdens caused by the entitlement program. 42 U.S.C. § 7194(a). If a request was denied, the party denied could petition the FERC for review. FERC's decision constituted final agency action subject only to judicial review. 42 U.S.C. § 7194(b)(1).

[2] The *Delta–Beacon* standards were developed in a series of cases to aid in the determination of when exception relief should be granted to small and independent refiners to alleviate serious hardship or gross inequity. Through April 1980, exception relief was available equal to the *least* amount computed under four alternative calculations:

(1) the historical profit margin test;

constituting "petroleum refining or marketing" was improperly included in the financial analysis to determine the amount of relief to which Thriftway was entitled.[3]

## I.

Thriftway is a small and independent refiner of crude oil. An affiliate of Thriftway, Thriftway Marketing Corp.,[4] owns and operates approximately 30 gasoline outlet/convenience stores at which it markets gasoline, grocery and sundry items. Each operation includes self-service gasoline pumps located in front of a store selling food, drink and convenience items. Purchasers pay for gasoline and any grocery or sundry items at the same cash register, operated by the same employee. Sales of all items share the same building, lot, pavement, parking and expenses.

In 1979, Thriftway's combined marketing, refining and petroleum operations were profitable. In 1980, however, Thriftway began to incur substantial entitlements purchase obligations. In June of that year, it applied for exception relief

(2) the historical return on invested capital test;
(3) a firm's net prospective entitlement purchase obligation for the remainder of its fiscal year; or
(4) a ceiling imposed on exception relief based on the 1975 National Old Oil Supply Ratio (NOOSR) (the 1975 NOOSR ceiling). *See Delta Refining Co.,* 2 FEA ¶ 83,275 (1975); *Beacon Oil Co.,* 3 FEA ¶ 83,209 (1976); *Sabre Refining, Inc.,* 2 DOE ¶ 81,128 (1978); *Warrior Asphalt Co. of Alabama, Inc.,* 3 DOE ¶ 82,549 (1979).

For periods subsequent to May 1, 1980, the 1975 NOOSR ceiling was further refined (the Modified NOOSR ceiling), and limited the available relief. *See Lunday–Thagard Oil Co.,* 5 DOE ¶ 81,294 (1980).

The scope of the financial analysis to be considered in the above calculations is limited to a refiner's financial returns reflecting refining and petroleum marketing activities. *See Delta Refining Company,* 2 FEA ¶ 83,275, at p. 83,882; *Edgington Oil Company, Inc.,* 2 DOE ¶ 82,528, at p. 85,068 (1978).

3. Two periods of time are involved in this case. One relates to Thriftway's operations for January through March 1980; the other to Thriftway's operations for the balance of that year. Generally, relief is granted on a prospective basis only, measured from the date of the is-

from DOE. The OHA, based upon appropriate financial projections, granted Thriftway interim prospective relief of $2,347,899 for the period April through December 1980, but denied Thriftway retroactive relief for the period of January through March 1980. On the basis of the firm's actual financial results, the OHA in March 1982, issued a final Decision and Order that Thriftway receive a total of $1,969,552 in relief.

The exception relief granted for April 1980 was calculated under the profit-margin test, and the exception relief for May through December 1980 was limited by the Modified NOOSR ceiling. *See supra* note 2. OHA determined that Thriftway, in its request for retroactive relief, had not demonstrated any special hardship or irreparable injury (the applicable standard for determining such relief).

In analyzing Thriftway's application for relief for all periods, the OHA considered financial data from Thriftway's grocery and sundry marketing activities. The OHA stated:

suance of the DOE's Proposed Decision and Order in a case; relief for a period prior to the issuance of that preliminary determination is considered "retroactive." *See Southwestern Refining Company, Inc.,* 7 DOE ¶ 81,262 (1981). Thriftway's original Application for Exception was filed on June 9, 1980, and the DOE's Proposed Decision and Order was issued on June 30, 1980. The DOE's Entitlements lists for January through March 1980 had been issued prior to the June 30, 1980, date of the Proposed Decision and Order. Thus, relief requested for that period was considered retroactive, while the relief requested for April through December 1980 was considered prospective.

The right to retroactive relief is more restricted, requiring proof of "irreparable injury". The DOE decided that Thriftway was entitled to no relief whatever for the retroactive period.

For the relevant period after the DOE's Decision and Order, based upon appropriate projections, the DOE did award some relief (later herein specified) even based on the inclusion of results from grocery and sundry marketing activities. Thriftway, claiming that results from those activities should have been excluded, demands more relief than the DOE granted.

4. The affiliate, Thriftway Marketing Corp., is owned by the same individuals (holding the same proportionate ownership shares) who own Thriftway.

It appears that Thriftway's grocery sales are an integral part of its gasoline retail operations. We therefore do not believe that that it is appropriate to separate revenues, related expenses and assets associated with Thriftway's grocery sales from the firm's other gasoline marketing activities, nor do we have an accurate basis to do so.

Decision and Order of March 11, 1982, n. 3, Stipulated Appendix at 158.

Thriftway petitioned FERC for review of the OHA award of relief. Thriftway's main contention was that OHA misapplied the *Delta–Beacon* standards by basing its decision on the combined results of Thriftway's petroleum, grocery and sundry marketing activities. FERC remanded the case to DOE in 1983. On remand, many documents were presented by Thriftway to demonstrate the character of its stores and its method of handling gasoline marketing revenues distinct from revenues generated by the sale of grocery and sundry items. The OHA, however, reaffirmed its original decision, finding that grocery and sundry sales were inextricably intertwined with gasoline sales.

Thriftway then sought FERC review again. On October 17, 1985, FERC issued an order affirming the decision of OHA, stating:

> Thriftway has neither advanced any arguments nor submitted any evidence which was not thoroughly considered and rejected in OHA's decisions of March 11, 1982 (9 DOE ¶ 81,021) and January 27, 1984 (11 DOE ¶ 82,555). We therefore affirm those decisions, and adopt the findings, conclusions of law, and rationale contained therein as our own.

*Thriftway Company*, 33 FERC ¶ 61,022 (1985).

Shortly thereafter, FERC issued an order granting Thriftway's request for reconsideration, and remanded the case to an administrative law judge to allow Thriftway an opportunity to present oral argument on the disputed issues. On July 23, 1986, after reviewing all the previous proceedings and the arguments, documents and testimony offered by Thriftway, FERC issued a decision that again affirmed the decision and order of OHA. 36 FERC ¶ 61,096 (1986). Specifically, FERC rejected Thriftway's contention that results from grocery and sundry operations should not have been included in the OHA's review. FERC found that OHA's analysis was correct because the marketing of gasoline, groceries and sundries shared the same geographic area, a common sales facility and equipment, and an interchangeable sales force.

Thriftway then filed this action in the United States District Court for the District of New Mexico. After reviewing the record, that court affirmed the FERC's decision and concluded that DOE correctly had applied its own precedents in determining that financial data from Thriftway's grocery operations should be included in the analysis for exception relief. Memorandum and Opinion Order at 9, Stipulated Appendix at 598.

## II.

The scope of review to be exercised by this Court is limited. *City of Long Beach v. Department of Energy*, 754 F.2d 379, 385 (TECA 1985). Congress having authorized administrative control in the DOE, the judicial role requires approval of the DOE's decision if there is a rational basis for it. *Id.* Further, pursuant to section 211(d)(1) of the Economic Stabilization Act of 1970, "[n]o order of [DOE] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." Section 211(d)(1) of the Economic Stabilization Act, located at 12 U.S.C. § 1904 note, and incorporated by reference into the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 *et seq.* by 15 U.S.C. § 754(a)(1). Under this standard, "great deference" is given to the agency's interpretation of its regulations. *Exxon Corp. v. Department of Energy*, 802 F.2d 1400, 1407 (TECA 1986); *City of Long Beach*, 754 F.2d at 386. The rationale for the deference is the recognized administrative expertise of an agency decision-maker and

the difficulty of judicial administration of complex programs dealing with the petroleum industry. *Exxon Corp.*, 802 F.2d at 1407; *City of Long Beach*, 754 F.2d at 386.

### III.

In its opinion, the district court noted that it is undisputed that in making a calculation for exception relief, the agency only considers the petroleum refining and marketing operations of a firm. In review, we must consider: (1) whether a rational basis exists for DOE's decision to include financial returns from Thriftway's grocery and sundry marketing activities in the calculation of Thriftway's exception relief, and (2) whether DOE's findings are supported by substantial evidence.

Upon review of the record, the Court finds that the DOE did have a rational basis for its decision and that its findings were supported by substantial evidence.

■ Thriftway's grocery and sundry sales were an integral part of its petroleum marketing activities. As has been stated by FERC, the marketing of gasoline, groceries and sundries is carried on at the same sales facilities, sharing the same expenses and using the same equipment and sales force. The practical reasons that require consideration of a firm's refining and petroleum marketing operations on a consolidated basis therefore apply, and supply a sound basis for considering Thriftway's groceries, sundries and petroleum marketing activities on a combined basis. Specifically, in view of the varying methods that a firm might use to allocate costs between its related operations, any attempt to segregate the financial results of those operations might not produce an accurate picture of the firm's operating posture.[5] *See Delta Refining Co.*, 2 FEA ¶ 83,275 at pp. 83,881–83,882. Thus it was not improper or irrational for DOE, in this case involving related marketing activities, to consider the combined petroleum and grocery marketing activities of Thriftway when analyzing the firm's request for exception relief.

Thriftway relies on two cases, *Young Coal Company*, Fed. Energy Guidelines (CCH) ¶ 46,086 (1980), and *Husky Oil Company, supra*, to support its contentions. Neither case, however, contains relevant support for Thriftway's position. In *Young*, the FERC determined that, to the maximum extent practical, exception relief should be based on analysis of the economics of a firm's petroleum business and not on whether the firm has assets and income in non-petroleum activities to offset losses in the petroleum business. *Young* at 46,-437 (citing 15 U.S.C. § 753(b)(1)(D) & (I) and 42 U.S.C. § 7194(a)). But FERC also noted that "Young's coal and ice business, on its face, does not appear to be related to the portion of Young's business which is covered by the regulations, and DOE does not provide any basis for finding to the contrary." *Id.* Here, DOE has demonstrated in detail how Thriftway's petroleum, grocery and sundry marketing activities are interrelated and integral to each other.

Further, Thriftway's reliance on *Husky Oil Company* is not persuasive. FERC properly considered and rejected Thriftway's argument regarding *Husky Oil Company*, stating:

> Thus the thrust of *Husky* is that where the DOE has determined that in evaluating a refiner's eligibility for relief it would look to the firm's refining and marketing activities, it may not properly combine the result of production related activities. In the instant case no such improper combination was made. In any event, this prohibition does not indicate that a particular refiner's activities must be viewed in a vacuum.

---

5. Indeed, when the DOE demanded financial data segregating the fixed assets and costs of petroleum marketing from those of marketing groceries and sundries, Thriftway itself protested that it was unable properly to segregate the assets and costs. The record does suggest that the DOE was not pleased with delays in receiving Thriftway's submissions of its claims regarding the breakdown of relevant assets and costs. However that may be, we cannot say that the DOE's displeasure was so excessive as to justify our disregarding the fact that substantial evidence supports the DOE's rejecting Thriftway's breakdown of the financial data.

On the contrary, pertinent precedent indicate the opposite. We have held that OHA may appropriately combine the firm's refining and marketing results with those of its refining and marketing parent or affiliates [citations omitted].... [E]xception relief must be premised on a causal nexus between the financial hardship suffered and the regulatory program. Thus, ... it is necessary to examine all relevant financial information.... This conclusion is equally applicable to Thriftway's grocery and sundry marketing activities.

*Thriftway Company,* 36 FERC ¶ 61,096, at p. 61,237.

### IV.

The purpose of the Entitlements Program was to reduce to a competitive range crude oil cost disparities among refiners. The conclusion in this case, that DOE had a rational basis for including certain financial data from Thriftway's grocery and sundry marketing activities in the exception relief calculation, does not undermine that purpose. Indeed, the record shows that DOE excluded from consideration certain crude oil production data of Thriftway's affiliates.[6] The financial returns from grocery and sundry marketing activities were included, however, for reasons that weighed the distorting effect of including such data against the concern that exclusion of the data would not result in a complete and accurate analysis of the firm's financial posture for purposes of exception relief.

The DOE's decision concerning Thriftway's exception relief was well within the administrative province. This Court must defer to the experience and expertise of the DOE, and should not substitute its judgment for that of the agency. *Carlos A. Leffler, Inc. v. Federal Energy Administration,* 455 F.Supp. 623, 624 (D.D.C.1976); *see also Exxon Corp.,* 802 F.2d at 1407.

The Court concludes that DOE's decision and award of relief to Thriftway had a rational basis, that DOE's findings were supported by substantial evidence, and that DOE acted within the scope of its authority. DOE's grant of certain exception relief to Thriftway for the period of April through December 1980 therefore remains in effect. As for the retroactive relief requested by Thriftway for the period of January through March 1980, the DOE's order denying relief also had a rational basis and was supported by substantial evidence. DOE has correctly construed "irreparable injury," the applicable standard for granting such retroactive relief, to be such a serious financial hardship as to preclude the applicant from continuing its essential operations. *Young Coal Company,* 4 DOE ¶ 81,062, at p. 82,768 (1979); *see also Carlos A. Leffler, Inc.,* 455 F.Supp. at 625; *Beacon Oil Co.,* 8 DOE ¶ 81,045, at p. 82,677 (1981); *Edgington Oil Company Inc.,* 8 DOE ¶ 82,568 (1981). Thriftway has incurred no such hardship.

The decision of the district court affirming FERC's final decision is AFFIRMED.

---

**6.** The DOE excluded from the *Delta–Beacon* analysis the operations of Thriftway affiliates Harlan Drilling Company and Viking Oil Corporation.