ATLANTIC RICHFIELD COMPANY,
Plaintiff–Appellant,

v.

U.S. DEPARTMENT OF ENERGY,
et al., Defendants–Appellees,

and

Don Van Vranken on behalf of himself
and all others similarly situated,
Intervenors–Appellees.

No. DC–117.

Temporary Emergency Court of Appeals.

Argued April 1, 1992.

Decided Aug. 27, 1992.

Sheldon E. Hochberg, David L. Roll and Pantelis Michalopoulos, Steptoe & Johnson, Washington, D.C. and Richard C. Morris, Atlantic Richfield Company, Los Angeles, Cal., were on the brief for plaintiff-appellant.

Richard F. Ahern, Don W. Crockett and Thomas Sacco, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., were on the brief for defendants-appellees; Tracy R. Kirkham, Hennigan & Mercer, with whom Josef D. Cooper, Law Offices of Josef D. Cooper, San Francisco, Cal., and William C. Barnard, Sommers & Barnard, Indianapo-

lis, Ind., were on the brief for intervenor-defendants-appellees.

Before GRANT, PECK, and WEIGEL, JJ.

JOHN W. PECK, Judge:

This appeal arose from the denial by the Office of Hearings and Appeals (OHA) of ARCO's application to refile Refiner's Monthly Cost Allocation Reports (RMCARs). The district court affirmed OHA's denial. For the reasons stated below, we affirm the district court.

## FACTS

During the period of petroleum price controls, the applicable regulations permitted oil refiners to incorporate increased crude oil costs into the prices of their refined products covered by the regulations. The formula for allocating costs to price increases for the covered goods was referred to as the V factor. The V factor entailed taking the total volume of a given covered product sold and dividing by the total volume of all covered products sold. The resulting fraction was then used to determine the portion of increased crude oil costs that could be attributed to the covered product. Oil refiners could either increase the price of the covered product or bank the increased costs to offset overcharges.

When the Economic Stabilization Act (ESA) expired on April 30, 1974, the Emergency Petroleum Allocation Act (EPAA) succeeded it as the vehicle for administering the price controls. Under the EPAA and the accompanying Department of Energy (DOE) regulations, certain products which had been regulated under the ESA were no longer subject to price controls. Under the new regulations, the increased cost of crude oil used to produce the newly exempt products was included in the total increased cost of producing covered goods, but the volume of the exempt goods sold was not included in the denominator of the V factor. Therefore, the oil companies could pass on the increased crude oil costs to produce newly exempt products in the price of both the newly exempt goods and the covered goods. In an eleventh hour attempt to prevent this result, DOE passed an emergency amendment to the regulations on April 30, 1974 which included the volume of newly exempt goods in the denominator of the V factor and thus prevented refiners from allocating increased crude oil costs from exempt goods to the price of the covered products. DOE promulgated the amendment without an opportunity for notice or comment.

As a refiner, ARCO was required to file Refiner's Monthly Cost Allocation Reports (RMCARs). After the promulgation of the emergency amendment, ARCO consistently filed its RMCARs using the amended V factor. However, Mobil Oil challenged the amendment in court. In *Mobil Oil Corp. v. Dep't of Energy*, 610 F.2d 796 (Temp.Emer.Ct.App.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980) (*Mobil* I), this court affirmed the district court's determination that the amendment was substantively and procedurally invalid because DOE had failed to consider the relevant factors set forth in § 4(b) of the EPAA, 15 U.S.C. § 753(b)(1) and failed to provide notice to interested parties and an opportunity for comment. After remand and a second appeal, this court ruled that Mobil was permitted to reallocate its costs in accordance with the unamended V factor for the period between the 1974 amendment and February 1976. *Mobil Oil Corp. v. Dep't of Energy*, 647 F.2d 142 (Temp.Emer.Ct.App.1981) (*Mobil* II). In 1981, DOE attempted to repromulgate and retroactively apply the 1974 amendment. However, in *Mobil v. Dep't of Energy*, 678 F.2d 1083, 1090 (Temp.Emer.Ct.App.1982) (*Mobil* III), this court invalidated the regulation.

In March 1979, DOE promulgated a refiling regulation which provided that after May 31, 1979, any refiner wishing to refile a revised RMCAR for a period more than one year prior to the refiling would have to obtain written permission from DOE "for good cause shown." 10 C.F.R. § 212.-126(d). The regulation also stated:

DOE will not make a finding of good cause routinely. Where it appears that

such a finding may adversely affect the interest of the consuming public, a firm must demonstrate in its application, at a minimum, that the claimed errors or omissions in the report or reports which the firm seeks to replace or modify did not result from a failure to exercise due care or diligence.

In March and April 1980 and August 1981, ARCO requested permission from DOE to refile its RMCARs using the unamended V factor. In each case, DOE rejected these refilings as premature pending final resolution of the *Mobil* litigation. In March 1982, ARCO again requested permission to refile. DOE did not respond to this request and ARCO did not pursue the matter. Shortly thereafter, ARCO and DOE entered into settlement negotiations regarding ARCO's compliance with the price control regulations. The negotiations resulted in a settlement and consent order in which the unamended V factor was used.

Meanwhile, in 1979, Don Van Vranken and other ARCO wholesale customers, who are intervenors in this case, brought suit in federal court alleging that ARCO had overcharged resellers for covered goods. *Van Vranken v. Atlantic Richfield Corp.*, 699 F.Supp. 1420 (N.D.Cal.1988), *aff'd*, 890 F.2d 421 (Temp.Emer.Ct.App.1989). In considering whether ARCO had overcharged its customers, the district court had to review ARCO's calculation of its banks of unrecovered costs which would be used to offset overcharges. Thus, the effect of the invalidation of the 1974 amendment became important with regard to calculating ARCO's banked costs. In a summary judgment motion, ARCO argued that the *Mobil* cases allowed it to retroactively reallocate its costs. The practical effect of such a reallocation would have been that ARCO could increase its banked costs and reduce its overcharge liability. The district court rejected ARCO's argument holding that the *Mobil* decisions did not automatically allow ARCO to reallocate its costs. *Id.* at 1424.

On appeal, this court held that the *Mobil* cases neither required nor permitted ARCO to retroactively reallocate its costs. *Van Vranken v. Atlantic Richfield Corp.*, 890 F.2d 421 (Temp.Emer.Ct.App.1989). The court reasoned that ARCO was not required to reallocate costs because it was not unlawful for ARCO to have priced its goods below the fixed maximum price by using the amended V factor. The court also stated that ARCO was not permitted to reallocate its costs because it had failed to obtain permission from DOE as required by the regulations. Furthermore, the court ruled that ARCO had waived it right to relief by failing to challenge the amendment in a timely manner.

In December 1989, ARCO applied for permission to refile its RMCARs claiming that this court's decision in *Van Vranken* necessitated the action. DOE did not respond to the application. ARCO treated DOE's silence as a denial and appealed to the OHA.

In February 1991, OHA upheld DOE's *sub silentio* denial. OHA concluded that the *Mobil* decisions did not constitute "good cause" under the regulation for ARCO's refilings. OHA relied on the *Van Vranken* decision and its holdings that the *Mobil* decisions did not require or permit ARCO to refile its costs. As an alternative ground for denying the application, OHA determined that ARCO had failed to satisfy the "due care and diligence" provision of the refiling regulation. ARCO appealed OHA's decision to the district court. In March 1991, the district court affirmed OHA's decision to deny ARCO's application on the grounds that there was no good cause for the refiling and the alternative grounds. This appeal followed.

### STANDARD OF REVIEW

█ Judicial review of OHA's decision is limited by § 211(d)(1) of the ESA which provides:

> [N]o order of [DOE] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.

12 U.S.C. § 1904, note, incorporated by reference in the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 754(a)(1).

Furthermore, this court has stated that because Congress authorized administrative control in DOE, "the judicial role requires approval of the DOE's decision if there is a rational basis for it." *Thriftway Co. v. Dep't of Energy*, 867 F.2d 1577, 1580 (Temp.Emer.Ct.App.1989) (citing *City of Long Beach v. Dep't of Energy*, 754 F.2d 379, 385 (Temp.Emer.Ct.App.1985)). Furthermore, DOE's interpretation of its regulations is entitled to great deference due to the agency's expertise and the difficulty of judicial administration of complex programs dealing with the petroleum industry. *Id.* at 1580–81.

## ANALYSIS

■ On appeal, ARCO's primary argument is that the *Mobil* decisions constitute "good cause" for the purposes of the refiling regulation. Although ARCO's similar argument that the *Mobil* cases required or permitted ARCO to reallocate its costs was rejected by this court in *Van Vranken, supra,* ARCO now argues that the Supreme Court's decision in *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (plurality) requires this court to allow ARCO to retroactively allocate V factor costs as Mobil did at the conclusion of the *Mobil* litigation. We cannot agree.

*Beam* involved the validity of a Georgia law which imposed an excise tax on imported liquor which was double the tax imposed on alcohol made from products grown in Georgia. In 1984, the Supreme Court held a similar Hawaii statute to be violative of the Commerce Clause in *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). The question presented in *Beam* was whether the *Bacchus* decision should apply retroactively to the claims in *Beam* which arose from facts antedating the *Bacchus* decision. Justice Souter held that *Bacchus* should be applied retroactively stating "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Beam*, —— U.S. at ——, 111 S.Ct. at 2448.

Since *Beam* is a relatively recent decision, its scope has not yet been judicially determined. Whether *Beam* has any application to agency adjudications is questionable. We note that the holding involved the application of a new constitutional rule. While the Court's remand in light of *Beam* of *Northwest Savings Bank, PaSA v. Welch*, —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), a case concerning the retroactive application of a statute of limitations, suggests that *Beam*'s application may extend beyond a purely constitutional context, there is no indication that regulatory matters are within its scope.

Furthermore, as noted in *District Lodge 64 v. N.L.R.B.*, 949 F.2d 441, 447 (D.C.Cir. 1991), *Beam* was a plurality decision in which the justices differed greatly in their rationale for the judgment. Justice Souter's opinion joined only by Justice Stevens, was based on the principles of *stare decisis*, equality, and the rule of law generally. *Beam*, —— U.S. ——, ——, 111 S.Ct. at 2444, 2446. However, Justices Blackmun and Scalia in separate opinions, joined by Justice Marshall, concurred in the judgment on the grounds that Article III prohibited prospectivity for the Court's new rules of decision. *Id.* —— U.S. at —— ——, 111 S.Ct. at 2449–51. While the principles of equality and the rule of law would seem applicable to agency decisions, Article III considerations are inapplicable in this context. Thus, *Beam* does not clearly preclude selective prospectivity in this case.

Finally, in his opinion concurring in the judgment, Justice White articulated his belief that the scope of *Beam's* holding was not all-encompassing. He stated that without overruling *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) and other cases which hold that certain decisions will be applied prospectively only, one could not "sensibly insist on automatic retroactivity for any and all judicial decisions in the federal system." *Beam*, —— U.S. at ——, 111 S.Ct. at 2449.

Moreover, even if *Beam* is applicable to this case, its application does not entitle ARCO to the desired remedy of reallocating its costs for the applicable period. Jus-

tice Souter made it clear that the grounds for *Beam* were narrow and confined entirely to an issue of choice of law, *i.e.*, whether to apply the old rule or the new rule. *Id.* —— U.S. at ——, 111 S.Ct. at 2448. After a rule is found to apply retroactively, the separate issue arises of "whether the party prevailing under a new rule should obtain the same relief that would have been awarded if the rule had been an old one." *Id.* —— U.S. at ——, 111 S.Ct. at 2443. While litigants are not to be distinguished for choice-of-law purposes on the equities of their claims, Justice Souter declared that "nothing we say here precludes consideration of individual equities when deciding remedial issues in particular cases." *Id.* —— U.S. at —— – ——, 111 S.Ct. at 2447–48. Although the liquor tax was declared unconstitutional in *Bacchus*, and that ruling was retroactively applied in *Beam*, the prevailing parties in each case were not automatically awarded the desired remedy of tax refunds. *Id.* —— U.S. at ——, ——, at 2445, 2448. The cases were remanded for consideration of the remedial issues.

In this case the "new rule" was that the 1974 amendment to the regulations was invalid. As noted by this court in *Van Vranken* and the district court in the instant case, ARCO's cost allocations as submitted were legal and proper under the invalid regulation or the regulation as it existed prior to the amendment. Therefore, there is no *requirement* that the cost allocations be changed. The question then becomes whether ARCO has established sufficient good cause for DOE to grant special permission for the refiling. This determination is within the discretion of DOE. 10 C.F.R. § 212.126(d). OHA upheld DOE's denial based on this court's express holding in *Van Vranken, supra*, that the *Mobil* decisions do not require or permit ARCO to reallocate its costs. In its decision, OHA noted that the effect of the reallocation of costs would be to reduce ARCO's potential liability in the *Van Vranken* case. DOE Administrative Record at 551, 553. In its brief and at oral argument, ARCO likewise admitted that the only impact of the refilings would be in determining its potential liability in *Van*

*Vranken.* Counsel for the DOE and the *Van. Vranken* intervenors argued that reallocation at this time would effectively allow ARCO to change the prices it charged its customers in the 1970s. Thus, we echo the *Van Vranken* holdings in concluding that even if the "new rule" in the *Mobil* cases invalidating the 1974 amended regulation is applied to ARCO, its original cost allocations are valid and legal and ARCO is not required or permitted to change them at this late date. The equities of this particular case especially militate against affording ARCO any special remedy. This is consistent with other cases involving private actions under the price regulations which "uniformly hold that where the original cost allocation was permissible but not required, retroactive recalculation should not be allowed to offset overcharges which had arisen as a result of unrelated regulatory violations." *Chevron U.S.A., Inc. v. Dep't of Energy*, 944 F.2d 914, 917 (Temp.Emer.Ct.App.1991) (citations omitted). Thus, the OHA and district court correctly concluded that no good cause exists to allow ARCO's belated refiling.

■ ARCO also argued that DOE's lack of response to its 1982 refiling and DOE's acquiescence in the use of the unamended V factor in settlement negotiations with refiners misled ARCO into believing that there was no need to pursue the refiling request and therefore DOE is estopped from denying ARCO the use of the unamended V factor now. This argument is disingenuous. In an earlier case in which ARCO attempted to reallocate costs, *Eastern Airlines v. Atlantic Richfield Co.*, 712 F.2d 1402, 1408 n. 14 (Temp.Emer.Ct.App.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 278, 78 L.Ed.2d 258 (1983), this court specifically noted that reallocation required written permission from DOE and cited the refiling regulation at issue here. Thus, an experienced and sophisticated litigant like ARCO cannot credibly claim that it was misled by DOE's actions or that it was unaware that written permission was necessary.

ARCO also challenges OHA's alternative grounds for rejecting the application. Since we agree with the district court's determination that OHA had a rational basis for denying ARCO's application for lack of good cause, we need not discuss these additional challenges. Accordingly, the judgment of the district court is affirmed.