Don VAN VRANKEN, et al.,
Plaintiffs–Appellees,

v.

ATLANTIC RICHFIELD COMPANY,
Defendant–Appellant.

No. 9–101.

Temporary Emergency Court of Appeals.

Argued May 26, 1989.

Decided Oct. 10, 1989.

Rehearing and Rehearing En Banc
Denied Nov. 20, 1989.

F. Bruce Dodge, Samuel R. Miller, Theodore P. Senger, Morrison & Foerster, San Francisco, Cal., were on the brief for defendant-appellant Atlantic Richfield Co.

Tracy R. Kirkham and Robert B. Ericson, Hennigan & Mercer, Los Angeles, Cal., and Josef D. Cooper, San Francisco, Cal., were on the brief for plaintiffs-appellees.

Before: BECKER, WEIGEL, and THORNBERRY, Judges.

THORNBERRY, Judge:

Defendant/appellant Atlantic Richfield Company ("ARCO") appeals the district court's grant of summary judgment in favor of Don Van Vranken, et al. (plaintiffs/appellees), prohibiting ARCO from retroactively reallocating crude oil costs. 699 F.Supp. 1420 (N.D.Cal.1988).

*FACTS*

In 1973, pursuant to the Economic Stabilization Act of 1970, 12 U.S.C. section 1904, *et seq.* ("the ESA"), the Cost of Living Council ("the CLC") promulgated mandatory price control regulations for all petroleum and petroleum products. These regulations permitted companies to pass along increases in crude oil costs in the price of their petroleum products. The method for calculating the maximum permissible price depended on the nature of the goods. This appeal concerns the calculation of maximum prices for "covered goods" as that term is defined in the regulations.

The CLC established a formula for determining the amount of a refiner's increased crude oil costs that could be attributed to recover goods. This calculation, known as the "V factor," entailed taking the total volume of a given covered good sold and dividing it by the total volume of all covered goods sold. The resulting fraction was used to determine the amount of the increased crude oil costs that could be attrib-

uted to the covered product. Refiners had the choice of either increasing the price of the covered goods or banking the increased costs to be used to offset overcharges.

Before the ESA was scheduled to expire on April 30, 1974, Congress passed the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. section 751 *et seq.* ("the EPAA"), to succeed the ESA. Congress, however, exempted certain petroleum products from the price controls under the EPAA. Pursuant to the statute exempting these products, the Department of Energy ("the DOE") issued regulations reflecting the exemption of these products from the price controls. The exclusion of these products from the price controls had a significant impact on the calculation of the permissible price increases for covered goods. Under the new regulations, the increased cost of crude oil used to produce the newly exempt goods was included in the total increased cost of producing covered goods; however, the volume of the newly exempt goods that were sold was not included in the denominator of the V factor. Increased crude oil costs to produce newly exempt goods could therefore be passed on in the price of non-exempt, covered goods. Effectively, under the new regulations, companies could pass on the increased crude oil costs to produce newly exempt goods in the price of the newly exempt goods themselves and the price of the covered goods.

By emergency regulatory amendment, without providing an opportunity for notice or comment, on April 30, 1974, the DOE redefined the V Factor to add the volume of newly exempt goods to the denominator of the V factor. This amendment resolved the problem created by the post-EPAA regulations and prevented refiners from apportioning increased crude oil costs attributable to exempt goods to the price of their covered products. The result was that only the increased crude oil costs attributable to covered goods could be passed on in the price of covered goods.

ARCO consistently abided by the April 1974 amendment, including allocating increased crude oil in direct volumetric proportion to the covered goods sold. Two companies—Mobil and Getty—did not abide by the V factor provisions in the amendment. Getty applied for and was granted administrative relief. Mobil challenged the validity of the amendment before a panel of this court. In *Mobil Oil Corp. v. DOE*, 610 F.2d 796 (TECA 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980) (*Mobil I*), a TECA panel found that the 1974 amendment was invalid because DOE failed to provide a period of notice and comment. Later, in *Mobil Oil Corp. v. DOE*, 647 F.2d 142 (TECA 1981) (*Mobil II*), this court permitted Mobil to reallocate crude oil costs incurred producing exempt goods to the cost of producing covered goods. Following the decisions in *Mobil I* and *Mobil II*, many refiners, including ARCO, sought to retroactively reallocate millions of dollars of increased crude oil costs used to produce exempt products that, absent the 1974 amendment, could have been attributed to covered products.[1]

In March 1979, the plaintiffs filed suit against ARCO, alleging that ARCO had improperly recalculated its May 1973 costs for crude oil. In determining whether ARCO had in fact overcharged the plaintiffs, the district court had to review ARCO's calculation of its banks of unrecovered costs to determine whether ARCO's banks were sufficient to offset any overcharges. The effect of the invalidation of the April 1974 amendment was critical to determining the amount of ARCO's banked unrecovered costs. ARCO, in a motion for summary judgment, urged that pursuant to the *Mobil* decisions it could retroactively reallocate its costs for producing exempt goods to covered goods and thereby increase its banks. The plaintiffs in their motion for summary judgment, argued that ARCO could not retroactively reallocate

---

**1.** The DOE issued further regulations at various points after the April 1974 amendment. Van Vranken urges that these amendments were validly promulgated and that they had the same effect as the April 1974 amendment. We need not reach the validity of these amendments because we find that ARCO cannot retroactively reallocate its costs even absent the amendments.

these costs. The district court granted the plaintiff's motion for summary judgment.

On Appeal, ARCO urges that (1) in light of the invalidation of the 1974 amendment, it *must* retroactively reallocate its costs from exempt to covered goods; and (2) it *may* reallocate its costs from exempt to covered goods. Several lower courts have addressed these issues and have rejected the arguments ARCO presently advances. *See Naph–Sol Refining Co. v. Murphy Oil Corp.*, 550 F.Supp. 297 (W.D.Mich.1982), *mod'd on other grounds*, sub nom. *Mobil Oil Corp. v. DOE*, 728 F.2d 1477 (1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984); *Kickapoo Oil Co., Inc. v. Murphy Oil Corp.*, No. 78–C–478–C (W.D.Wis. December 28, 1983); *Martin Oil Service, Inc. v. Koch Refining Co.*, 718 F.Supp. 1334 (N.D.Ill.1989); *U.S. Oil Comp., Inc. v. Koch Refining Company*, No. 79–C–659 (E.D.Wis. March 13, 1989).

## ARCO'S CLAIM THAT IT MUST RETROACTIVELY REALLOCATE ITS COSTS

■ ARCO urges that because *Mobil I* invalidated the 1974 amendment the only legal method for allocating increased crude oil costs is to allocate the increased crude oil costs for producing exempt goods to covered goods. For the following reasons, we reject this argument. First, neither *Mobil I* nor *Mobil II required* Mobil to retroactively reallocate costs. Rather, the *Mobil I* panel "permitted ... Mobil to allocate exempt product costs to covered products." *Mobil I*, 610 F.2d at 805; *see also Mobil II*, 647 F.2d at 146–47 (holding that "the judgment is correct insofar as it permits Mobil to allocate exempt product costs to covered products ...").

Second, even absent the 1974 amendment, nothing in the regulations required that costs for exempt goods be attributed to covered goods when calculating the maximum allowable price for covered goods. In fact, the relevant regulation stated that "in computing [maximum allowable] prices ... a refiner *may* increase its May 15, 1973 selling prices ... by an amount to reflect ... increased product costs...." 10 C.F.R. Section 212.83(c)(1) (emphasis added). Nothing in this regulation requires

that a refiner bank or increase the price of covered goods to compensate for increased crude oil costs.

Third, there was nothing unlawful about the manner in which ARCO allocated its increased costs. The price ARCO charged for covered goods was within the lawful maximum. *See Longview Refining Co. v. Shore*, 554 F.2d 1006, 1017 (TECA), *cert. denied*, 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977) (holding that there is no legal wrong if a plaintiff is charged less than the maximum price). If, absent the 1974 amendment, the regulations required ARCO to allocate the increased costs of producing exempt goods to the price of covered goods, it would be unlawful for ARCO to have failed to allocate the increased costs to the price of the covered goods. No one, including the DOE, has contended that ARCO violated the law.

## ARCO'S CLAIM THAT IT MAY RETROACTIVELY REALLOCATE ITS COSTS

Given that there is no support for ARCO's contention that refiners are *required* to retroactively reallocate costs based on *Mobil I* and *Mobil II*, there remains only the question of whether ARCO *may* retroactively reallocate the costs to covered goods. In reviewing this question, two issues arise: first, whether ARCO must obtain permission from the DOE before retroactively reallocating costs; and second, whether ARCO waived any right to retroactive reallocation by failing to timely challenge the 1974 amendment.

### ARCO's failure to obtain the DOE's permission to refile

In *Eastern Air Lines v. Atlantic Richfield Co.*, 712 F.2d 1402, 1408–09 (TECA), *cert. denied*, 464 U.S. 915, 104 S.Ct. 278, 78 L.Ed.2d 258 (1983), a panel of this court prohibited ARCO from retroactively reallocating costs to compensate for overcharges. In *Eastern Airlines*, ARCO sought to take costs allocated to gasoline and reallocate them to a specified product group. Under the regulations, ARCO initially had the option of allocating the costs to either gasoline or the product group. We found that, although ARCO initially

had the choice where to allocate the costs, the regulations did not permit retroactive reallocation absent permission from the DOE. *Id.* at 1408, n. 14. The relevant regulations provide that:

> DOE will routinely accept resubmissions or refiling of [cost allocation] reports only within one year after the original filing or submission. Any entry contained in an otherwise timely report which purports to change or adjust retroactively an entry or allocation contained in a report previously filed or submitted shall be considered a refiling or resubmission for purposes of the paragraph and will not be given force or effect absent compliance with the provisions of this paragraph....
>
> Notwithstanding the provisions ... of this section, a refiner may resubmit or refile reports until June 1, 1979, for months of measurement beginning with September 1973; where expressly authorized by DOE regulation or order; or *where DOE grants written permission to resubmit or refile for good cause shown.*

10 C.F.R. section 212.126(d)(1)–(2) (emphasis added).

■ In the instant case, ARCO sought, but did not obtain, permission from the DOE to retroactively reallocate costs. As in *Eastern Airlines,* ARCO's failure to obtain permission from the DOE precludes it from any relief by this court.[2]

ARCO attempts to distinguish *Eastern Air Lines* on the grounds that in *Eastern Air Lines* ARCO could choose how to allocate costs while in the instant case only one method for allocating increased costs was available. We do not find this distinction consequential. The central basis of the decision in *Eastern Air Lines* was that ARCO failed to obtain permission from the DOE to retroactively reallocate costs as required by the regulations. The failure to obtain permission from the DOE, not the nature of the initial allocation of costs, determined the outcome in *Eastern Air Lines.* We therefore find the distinction

between *Eastern Air Lines* and the instant case immaterial.

ARCO further argues that the above regulations are not relevant in the context of a claim for relief based on the invalidation of a regulation. ARCO urges that because the 1974 amendment was invalid, this court can award relief in the form of retroactive reallocation regardless of the DOE refiling regulations. We disagree. Nothing in the invalidation of the 1974 amendment had any effect on the refiling regulations and nothing in the refiling regulations excepts refiners from compliance when an allocation regulation is invalidated. We thus find that the regulations governing retroactive reallocation are no less effective because the 1974 amendment was invalidated. Had ARCO timely challenged the 1974 amendment as Mobil did, it could have sought relief from the amendment and would have presumably been awarded the relief it now seeks without having to file reallocation reports. Having failed to do so, ARCO cannot avoid the clear language of the regulation requiring permission from the DOE before reallocating costs.

### ARCO's failure to timely challenge the regulation

■ We further find that ARCO waived its right to relief by not challenging the regulation in a timely manner. At oral argument, ARCO suggested that once we declared the 1974 amendment invalid, refiners had an indefinite period in which to retroactively reallocate their costs. This argument is without merit. If ARCO believed the 1974 amendment was invalid, the company should have taken steps to protest the regulation rather than attempt to jump on Mobil's coattails five years after the amendment became effective. ARCO could have, like Mobil, challenged the regulation. The company could have also sought to intervene in Mobil's action, or requested administrative relief as Getty did. Having failed to challenge the regula-

**2.** If Arco thought the DOE erred in not granting the company permission to retroactively reallo-

cate its costs, ARCO could presumably have brought an action appealing the DOE's decision.

tion in a timely manner, ARCO is not entitled to relief at this late date.

For the foregoing reasons, we AFFIRM the district court's judgment.