AMOCO CORPORATION,
Plaintiff–Appellee,

v.

U.S. DEPARTMENT OF ENERGY and
James V. Watkins, Secretary of
Energy, Defendants–Appellants.

No. 7–18.

Temporary Emergency Court of Appeals.

Argued March 13, 1990.

Decided July 6, 1990.

Rehearing and Rehearing En Banc
Denied Aug. 15, 1990.

Don W. Crockett, U.S. Dept. of Energy, Washington, D.C., with whom Thomas W. Sacco of the same office was on the brief, for defendants-appellants U.S. Dept. of Energy, et al.

Melvin Goldstein, Goldstein and Claxton, Washington, D.C., with whom Charles R. Claxton of the same firm was on the brief, for plaintiff-appellee Amoco.

Before PECK, DAUGHERTY, and BROWN, Judges.

PECK, Judge:

This appeal arose from the denial by the Office of Hearings and Appeals (OHA) of Amoco's late application in the Aminoil restitutionary fund proceeding pursuant to 10 C.F.R. Part 205, Subpart V. Amoco appealed the OHA ruling and it was reversed by the district court. For the reasons stated below, we now reverse the district court.

## FACTS

During the period that petroleum price controls were in effect, Amoco bought substantial quantities of natural gas liquids from Solar Gas, Inc. Solar Gas was a subsidiary of Burmah Oil, which later changed its name to Aminoil. In July 1975, the Department of Energy (DOE) issued

two Notices of Probable Violation (NOPV) to Solar Gas charging that it had violated DOE regulations in overcharging its customers for butane and natural gasoline. Amoco was named in these NOPVs as an overcharged customer. In June 1976, the DOE rescinded the NOPVs in order to combine the Solar Gas investigation in a larger investigation involving Solar's parent company.

On April 6, 1981, DOE and Aminoil entered into a consent decree in which Aminoil agreed to deposit $16.5 million with DOE for disbursement to overcharged customers. A notice announcing the proposed consent order and soliciting comments was published in the Federal Register on April 29, 1981. 46 Fed.Reg. 23,970 (1981). Although the consent order covered overcharges by Aminoil and its affiliates and subsidiaries, only Aminoil was actually named in the notice. On June 15, 1981, the DOE published a notice of final action on the consent decree in the Federal Register. 46 Fed.Reg. 31,321 (1981). Again, none of Aminoil's subsidiaries were named.

In 1983, DOE's Office of Hearings and Appeals (OHA) began a proceeding under 10 C.F.R. Part 205, Subpart V to identify the injured parties and effect restitution. On July 1, 1983, OHA published a Proposed Decision and Order for implementing the refund procedure in the Federal Register. 48 Fed.Reg. 30,428 (1983). Aminoil's subsidiaries including Solar Gas were identified in a footnote at the end of the notice. On April 8, 1985, DOE published the final Decision and Order regarding the implementation of the refund procedure in the Federal Register and the Federal Energy Guidelines, the official reporter for DOE decisions. 50 Fed.Reg. 13,855 (1985). The deadline for refund applications was July 8, 1985. In addition to the published notices, OHA requested relevant information from the Kansas City enforcement office and received a list of seven companies who had contacted the office about the Federal Register notice on the consent order. OHA mailed a copy of the order to all organizations who had contacted OHA about the Aminoil fund. By the deadline only thirty-six applications had been received. Under 10 C.F.R. § 205.285, OHA may accept late applications for "good cause shown." OHA routinely granted filing extensions through 1985. Through 1987 an additional thirty late applications were accepted for good cause shown. Two additional late applications were accepted early in 1988.

Amoco learned of the Aminoil refund in August 1988 when Mr. Barron, an attorney who handled many of the Aminoil claims, called Amoco to offer his services. Mr. Barron declined to identify the refund proceeding unless Amoco agreed to pay him a contingency fee. Amoco refused Mr. Barron's offer. Further investigation led Amoco to the Aminoil proceeding, however, Amoco decided that its dealings with Aminoil were too small to justify filing for a refund. Amoco received a second solicitation from Energy Refunds, Inc. and at that time learned that purchases from Solar Gas were also eligible for the refund. On September 23, 1988, Amoco filed a Request for Leave to File Application for Refund, stating that it "had not been made aware of the Aminoil refund procedure by any government or trade publication."

## OHA ruling

On November 16, 1988, OHA issued a Decision and Order dismissing twelve late Aminoil refund applications, including Amoco's. *Aminoil U.S.A., Inc./Amerada Hess Corp. et al.*, 18 DOE § 85,254 (1988). In its decision, OHA stated that the public had been given sufficient notice of the proceeding and deadline through the various Federal Register notices. OHA noted the difficulty in giving notice to all affected customers because many are individuals or small, unsophisticated firms unaccustomed to dealing with federal agencies. OHA acknowledged that late filings in the Aminoil and similar proceedings had been routinely accepted for good cause shown as long as the proceeding was not near completion. OHA also noted that these considerations were not applicable to the twelve submissions under consideration and invoked the need for administrative finality. In addressing Amoco's claim, OHA noted Amoco's "very substantial legal and other re-

sources" and the fact that Amoco had participated in numerous DOE proceedings over the years. On this basis, OHA opined that Amoco should be "intimately familiar with the DOE's rules and proceedings" and could not sustain its claim that it "could not have known about [the Aminoil] proceeding until this point." Thus, OHA concluded that Amoco could not justify its late application and dismissed it.

### District court decision

Amoco sought review of OHA's decision in district court. By agreement of the parties, the case was decided by a magistrate without subsequent review by the district court. DOE made a motion for summary judgment which the magistrate denied on the grounds that Amoco was entitled to actual notice of its right to make a claim and that factual issues existed concerning Amoco's claims. The case proceeded to trial.

The magistrate found that there was no substantial basis for the findings OHA used to justify its decision to dismiss Amoco's application. *Amoco v. Department of Energy*, Civ. No. H89–0003, slip op. at 14, 28 (N.D.Ind. June 28, 1989). Furthermore, the magistrate ruled that DOE had a statutory duty to give Amoco actual notice of the pendency of the Aminoil Subpart V proceeding and that DOE had failed to fulfill its duty to Amoco in this case. *Id.* at 20. In light of DOE's failure to fulfill its statutory duty and the lack of substantial basis for OHA's findings, the magistrate held that OHA's denial of Amoco's application was arbitrary and capricious and could not stand. *Id.* at 28. DOE appealed.

### ANALYSIS

DOE asserts that the primary issue before this court is whether OHA's dismissal of Amoco's late application was within its discretionary authority. DOE notes that this court has affirmed OHA's discretionary authority to reject untimely applications for intervention in enforcement proceedings. *Consolidated Edison Co. v. Breznay*, 873 F.2d 301 (Temp. Emer. Ct. App.1989). DOE urges that OHA similarly exercised its lawful discretion in dismissing Amoco's application because Amoco had failed to show good cause for its delay. Additionally, DOE asserts that the magistrate erred in finding that DOE had a statutory duty to give Amoco actual notice of the Aminoil Subpart V proceeding. DOE contends that publication of the Federal Register notices regarding the Aminoil proceeding fulfills its duty to attempt to identify overcharge victims.

Amoco argues that the question of whether DOE fulfilled its duty to attempt to identify potential participants in the Aminoil proceeding must be answered before OHA's discretion to deny Amoco's application comes into play. Amoco contends that DOE has a statutory duty to give actual notice to overcharge victims and that Amoco was clearly not afforded such notice. Amoco complains that the early Federal Register notices were misleading and inadequate because they did not name Solar as an subsidiary of Aminoil involved in the refund proceeding. In the later notices, Amoco complains that Solar was not named in the caption. A reader had to consult the footnotes or the summary to ascertain that Solar's customers were eligible for the refund proceeding. Furthermore, since the Kansas City office had information in its files in connection with the 1975 NOPVs that Amoco was an overcharged customer of Solar, DOE should have notified Amoco of the proceeding. Thus, Amoco concludes that because DOE's statutory duty was not fulfilled, OHA did not have the discretionary authority to dismiss Amoco's application. Additionally, Amoco argues that other late applications were accepted reciting the same reason that Amoco offered: the applicant did not learn about the pendency of the proceeding until after the deadline for applications. Thus, OHA's dismissal of Amoco's application was arbitrary and capricious.

### Standard of review

Administrative orders of the DOE are reviewed in accordance with the Economic Stabilization Act (ESA) which provides that no order shall be set aside "unless a final

judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." § 211(d)(1), 12 U.S.C. § 1904, note, incorporated by reference in the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 754(a)(1). The matter before us is procedural. A court may exercise greater independent judgment when reviewing agency action on procedural rather than substantive grounds. *Mobil Oil Corp. v. Department of Energy*, 728 F.2d 1477, 1486 (Temp. Emer. Ct.App.1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984). Because we review the agency action on the identical basis as did the district court, no particular deference is accorded to the conclusions of the district court. *Id.* The ultimate question is whether the OHA's decision to deny Amoco's application was arbitrary and capricious or an abuse of its discretion. We have utilized Amoco's approach to this matter, considering DOE's duty first. However, we do not reach the same result.

### DOE's duty

It is undisputed that DOE has "a *duty* to try to ascertain those overcharged, and refund them, with interest, from the restitution funds." *Citronelle–Mobile Gathering, Inc. v. Edwards*, 669 F.2d 717, 723 (Temp. Emer. Ct.App.1982), *cert. denied*, 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982). DOE acknowledges this duty, but claims that the notices published in the Federal Register satisfied this duty. However, Amoco insists, and the magistrate agreed, that DOE also had a statutory duty to provide Amoco with actual notice of the Aminoil proceeding.

■ The magistrate cites the Petroleum Overcharge Distribution and Restitution Act of 1986 (PODRA), 15 U.S.C. §§ 4501–07 as support for his conclusion that DOE violated its statutory duty by failing to provide Amoco with actual notice of the Aminoil proceeding. Section 4502(b)(1) provides that OHA shall conduct proceedings in accordance with subpart V regulations for the purpose of, to the maximum extent possible—

(A) identifying persons or classes of persons injured by any actual or alleged violation of the petroleum pricing and allocation regulations issued pursuant to the Emergency Petroleum Allocation Act of 1973 or the Economic Stabilization Act of 1970;

(B) establishing the amount of any injury incurred by such persons; and

(C) making restitution, through the disbursement of amounts in the escrow accounts ... to such persons.

Reliance on this section is misplaced for two reasons. First, § 4502(a)(1) provides that PODRA applies to orders issued after the date of enactment, October 8, 1986. The final order regarding the Aminoil proceeding was published in the Federal Register more than a year earlier in April 1985. Amoco argues that this section is relevant because PODRA applies to "such funds held in escrow ... on or after the date of enactment...." 15 U.S.C. § 4501(a)(2)(A). Nonetheless, assuming that this section requires actual notice, it would be unreasonable to expect the DOE to anticipate the provisions of a law that was not in existence when the final Aminoil order was published.

More importantly, this section does not require actual notice to overcharge victims. The plain language of the act obligates OHA to identify overcharge victims, establish their injury, and make restitution. Historically, OHA has identified overcharge victims by soliciting applications through publication of notices in the Federal Register, as was done in this case. *Citronelle–Mobile Gathering, Inc. v. Edwards*, 826 F.2d 16, 30 (Temp. Emer. Ct. App.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987). Furthermore, this court has held that in certain instances, where identification of individual overcharge victims would be virtually impossible, DOE may effect restitution through payments to the state governments or to the Federal Treasury. *E.g., United States v. Exxon Corp.*, 773 F.2d 1240 (Temp.

Emer. Ct.App.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986); *Payne 22, Inc. v. United States*, 762 F.2d 91 (Temp. Emer. Ct.App.1985). This precedent could not stand if there was a statutory duty of actual notice to potential overcharge victims. Thus, we conclude that the magistrate erred in concluding that DOE had a statutory duty to give actual notice to Amoco.

### OHA's discretion

■ The magistrate ruled that OHA's decision to deny Amoco's application was arbitrary and capricious and that the findings used by OHA to justify its decision were without substantial support in the record. Specifically, the magistrate found these OHA findings to be without support: 1) that the public had sufficient notice of the Aminoil proceeding and the deadline; 2) that the proceeding was nearing completion when Amoco submitted its application; and 3) that Amoco could not sustain its claim that it did not know about the proceeding until the time of its late submission. We disagree.

OHA had published notices in the Federal Register regarding the Aminoil proceeding. Additionally, the final order appeared in the Federal Energy Guidelines, the official DOE reporter published by Commerce Clearing House. OHA had taken the two steps that were always taken in Subpart V proceedings: publishing Federal Register notices and contacting the enforcement office with a request for information. OHA had received 174 applications prior to the twelve that it denied in November 1988. Thus, OHA was justified in its belief that the public had received sufficient notice of the proceedings.

Amoco complains that the Federal Register notices were inadequate to notify the public that Solar customers were eligible to participate in the Aminoil proceeding. It is true that the early Federal Register notices concerning the Aminoil consent order did not name Solar. However, the 1983 proposed order for distribution of the restitutionary fund did name Solar, albeit in a footnote. The final order, which established the deadline, named Solar in the text.

It does not seem unreasonable that company personnel seeking to protect its interests by reviewing notices of overcharge proceedings should read beyond the caption to ascertain what affiliates and subsidiaries, if any, were included in a proceeding.

Although OHA did not announce a completion date for the proceeding, OHA's actions suggest a determination to bring the proceeding to an end. OHA denied Amoco's application in November 1988 noting that "allowing a never-ending trickle of applications" would require constant re-evaluation of the restitutionary fund, prevent the payment of indirect restitution, and delay the end of the proceeding. In accordance with this policy, OHA decided all remaining applications, including motions for reconsideration, by February 1989. Thus, the Aminoil proceeding was in fact nearing completion.

Finally, Amoco asserted that it did not know about the proceeding because it "had not been made aware of the Aminoil refund procedure by any government or trade publication." OHA rejected this assertion on the grounds that Amoco had extensive experience with DOE rules and proceedings. Amoco had both participated in other refund proceedings and been the subject of a similar Subpart V proceeding. Additionally, OHA knew that Amoco had substantial legal resources and that the proceeding had been publicized in both the Federal Register and the Federal Energy Guidelines. OHA's considerable experience with Amoco justified it in making its determination that Amoco could have informed itself of the proceedings prior to its late application. Evidence in the record before this court further supports OHA's conclusion. For instance, at trial, Mr. Gallo, Amoco's senior attorney in charge of DOE affairs, testified that the Amoco law department receives two copies of the Federal Register daily. Mr. Gallo's name is on the routing slip for the Federal Register. However, he had instructed his secretary not to bring it to his office. Neither Mr. Gallo nor any other employee was assigned the task of monitoring Federal Register notices for proceedings in which Amoco had an interest. Thus, if Amoco "had not been made aware of the Aminoil proceeding by any govern-

ment or trade publication," it was because it had not made any effort to inform itself.

Amoco complains that similar reasons were accepted by OHA in accepting other applications. However, the last applications were accepted in April 1988, five months before Amoco made its application. As OHA noted, all refund proceedings must eventually be closed. To continually accept late applications would inevitably delay the completion of the proceeding. Additionally, as noted by OHA in its order, many overcharge victims were individuals or small firms, presumably without routine access to the Federal Register or substantial legal resources. Claims by such applicants that they did not know about the proceeding are certainly more credible than Amoco's. Thus, OHA's determination that Amoco could not sustain its claim that it could not have known about the proceeding is reasonable.

### CONCLUSION

Thus, we cannot agree with the magistrate's conclusion that OHA's decision to deny Amoco's application was without substantial support and was arbitrary and capricious. Furthermore, it is within OHA's lawful discretion to deny late applications. "Any application [for refund] that is not filed on a timely basis may be summarily dismissed." 10 C.F.R. § 205.285; *see also, Consolidated Edison Co. v. Breznay*, 873 F.2d 301, 310 (Temp. Emer. Ct.App.1989) ("[T]he request of appellants to intervene was untimely, and its denial on that ground was within the discretion of the OHA."). Therefore, we reverse the decision of the district court and remand with instructions to enter summary judgment in favor of DOE.