any, no later than October 14.[96]

**ATLANTIC RICHFIELD COMPANY,**
Plaintiff,

v.

**UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants,**

and

**Don Van Vranken on behalf of himself and all others similarly situated, and Sinclair Oil Corporation, Intervenors–Defendants.**

Civ. A. No. 91–465.

United States District Court,
District of Columbia.

Aug. 20, 1991.

---

David L. Roll, Samuel T. Perkins, Alfred M. Mamlet, Steptoe and Johnson, Washington, D.C., Richard C. Morse, Los Angeles, Cal., for Atlantic Richfield Co.

Jay B. Stephens, U.S. Atty., Don W. Crockett, Richard F. Ahern, Thomas W. Sacco, U.S. Dept. of Energy, Washington, D.C., for U.S. Dept. of Energy.

Josef D. Cooper, San Francisco, Cal., Tracy R. Kirkham, Hennigan & Mercer, Los Angeles, Cal., William C. Barnard, Sommer & Barnard, P.C., Indianapolis, Ind., for intervenor-defendant Don Van Vranken.

Melvin Goldstein, Goldstein & Claxton, Washington, D.C., Richard W. Giaque, Giaque, Crockett & Bendinger, Salt Lake City, Utah, for intervenor-defendant Sinclair Oil Corp.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Plaintiff Atlantic Richfield Company ("ARCO") brings this action to set aside a ruling by the Office of Hearings and Appeals ("OHA") of the United States Department of Energy ("DOE"). ARCO's summary judgment motion is opposed by the government defendants and by intervenor-defendants the Van Vranken class and Sinclair Oil Corporation. As discussed below, the Court will uphold the decision of the OHA and deny ARCO's motion for summary judgment.

### I. *Background*

#### A. The Regulatory Background

Between 1973 and 1981, the federal government regulated the prices of petroleum and petroleum products. Under the regulatory system, oil refiners could charge no more than a fixed maximum price for products subject to the regulations ("covered goods.") The regulations allowed, however, for refiners to incorporate increased production costs into the prices of their covered goods. The formula for allocating costs to price increases for each type of covered good was known as the "V factor," and it entailed dividing the total volume of a given covered good sold by the total volume of all covered goods sold. The resulting fraction was used to determine the amount of increased costs that could be attributed to each type of covered good. Refiners had the option of either increasing prices of covered goods or banking the increased costs to offset overcharges.[1]

1. Much of the background to this litigation is derived from *Van Vranken v. Atlantic Richfield* *Co.,* 890 F.2d 421 (Temp.Emer.Ct.App.1989) and 699 F.Supp. 1420 (N.D.Cal.1988).

Petroleum price controls were originally administered pursuant to the Economic Stabilization Act of 1970 ("ESA"), 12 U.S.C. § 1904 *et seq.* On April 30, 1974, however, the ESA lapsed and was replaced by the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. § 751 *et seq.* The EPAA, and the accompanying DOE regulations, exempted certain formerly covered products from the mandatory price controls. The new regulations, however, failed to similarly subtract the increased production costs of the newly exempt goods from the denominator of the V factor. As a result, refiners could pass on increased costs of producing exempt goods in the prices charged for non-exempt, covered goods, as well as in the prices of the unregulated exempt goods.

Also on April 30, 1974, the DOE, in an attempt to remedy this situation, passed without notice or the opportunity for comment an emergency regulation ("the 1974 amendment") intended to prevent refiners from incorporating the costs of producing exempt goods into prices charged for covered goods. The 1974 amendment redefined the V factor to add the volume of exempt goods to the denominator of the V factor.[2]

Throughout the regulatory scheme, it was necessary for refiners to obtain DOE permission to allocate increased costs among the prices charged for covered goods. Permission was sought by filing with DOE a Refiner's Monthly Cost Allocation Report ("RMCAR" or "Report.") Following promulgation of the 1974 amendment, ARCO consistently filed RMCARs utilizing the amended V factor. In contrast, two other refiners challenged applica-

tion of the 1974 amendment. One refiner, Getty, applied for and was granted administrative relief. Another refiner, Mobil, chose to challenge the validity of the 1974 amendment in federal court. In *Mobil Oil Corp. v. DOE*, 610 F.2d 796 (Temp.Emer. Ct.App.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980) (*Mobil I*), the Temporary Emergency Court of Appeals ("TECA") found the 1974 amendment to be invalid based upon the lack of notice and opportunity for comment. Later, in *Mobil Oil Corp. v. DOE*, 647 F.2d 142 (Temp.Emer.Ct.App.1981) (*Mobil II*), TECA permitted Mobil to reallocate its costs in accordance with the unamended V factor. DOE attempted to revive and retroactively implement the 1974 amendment in 1981, but this regulation was also struck down by TECA. *Mobil Oil Corp. v. DOE*, 678 F.2d 1083, 1090 (Temp.Emer.Ct. App.1982) (*Mobil III*).

On three separate occasions in 1980 and 1981, ARCO requested permission from DOE to refile its previous RMCARs using the unamended V factor.[3] On all three occasions ARCO's requests were denied.[4] ARCO submitted a fourth request to resubmit its previous RMCARs on March 24, 1982. DOE never responded to this request. ARCO did not further pursue this latest request.

### B. The *Van Vranken* Litigation and Subsequent Events

In 1979, Don Van Vranken, on behalf of a nationwide class of petroleum product resellers, brought an action against ARCO in the Northern District of California alleging that ARCO had overcharged resellers for covered goods purchased between 1974

---

**2.** The V factor as redefined by the 1974 amendment will hereinafter be referred to as the "amended V factor." The original V factor prior to the 1974 amendment will be referred to as the "unamended V factor."

**3.** DOE regulations, discussed *infra,* allow refiners to request leave to refile previously submitted RMCARs. *See* 10 C.F.R. § 212.126(d).

**4.** ARCO maintains that its 1980 and 1981 requests for refiling were rejected because DOE considered them to be premature in light of the

ongoing *Mobil* litigation. The Van Vranken class disputes this characterization of DOE's actions. An examination of the administrative record in this matter reveals that DOE took the position in all three denials that refiners were required to comply with the amended V factor pending ultimate resolution of the *Mobil* litigation. Administrative Record ("R.") at 98–112. In the interim, the regulations implementing the amended V factor were considered by DOE to be "valid and enforceable." R. at 101, 105; *see* R. at 112.

and 1982.[5] On April 4, 1988, ARCO moved for summary judgment on the ground that the *Mobil* decisions allowed it to retroactively reallocate its costs without reference to the invalidated amended V factor. *Van Vranken v. Atlantic Richfield Co.*, 699 F.Supp. 1420, 1421–22 (N.D.Cal.1988). The practical result of such reallocation would have been to allow ARCO to retroactively increase its costs and thereby increase its banks to offset any overcharge liability. *Id.* The District Court rejected ARCO's contentions and held that the *Mobil* trilogy did not provide authorization for non-party refiners to automatically reallocate past production costs. *Id.* at 1424.

The District Court decision was upheld by TECA in *Van Vranken v. Atlantic Richfield Co.*, 890 F.2d 421 (Temp.Emer.Ct. App.1989), *cert. denied*, 494 U.S. 1005, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990). TECA rejected ARCO's arguments that the *Mobil* decisions provided authority for retroactive reallocation of its costs. First, TECA held that the *Mobil* decisions did not require reallocation. *Id.* at 423. TECA noted that "neither *Mobil I* nor *Mobil II* required Mobil to retroactively reallocate costs," and that "nothing in the regulations required that costs for exempt goods be attributed to covered goods when calculating the maximum allowable price for covered goods." *Id.* Retroactive reallocation would be required, TECA held, if ARCO's previous cost allocations had been unlawful. *Id.* But because it was not unlawful for ARCO to have priced its covered goods *below* the fixed maximum price, as it had done by utilizing the amended V factor formula, ARCO was not required to retroactively reallocate its costs. *Id.*

Second, TECA rejected ARCO's argument that the *Mobil* decisions permitted it to reallocate its costs. TECA found that the invalidation of the 1974 amendment by the *Mobil* courts did not excuse ARCO from compliance with DOE regulations relating to resubmission of RMCARs, and that those regulations conditioned resubmission upon written permission from DOE. *See id.* at 424. The Court concluded that "ARCO sought, but did not obtain, permission from the DOE to retroactively reallocate costs.... ARCO's failure to obtain permission from the DOE precludes it from any relief by this court." *Id.* (footnote omitted).[6] TECA also held that ARCO waived its right to relief by not challenging the regulations implementing the amended V factor in a timely manner, as had Mobil and Getty. *Id.* at 424–25.

Seizing upon language in TECA's decision suggesting that retroactive cost allocation could only be accomplished with DOE permission, ARCO filed an application with DOE to resubmit its RMCARs on December 12, 1989. Administrative Record ("R.") at 38. Again, DOE never responded to ARCO's request. In contrast to its actions following its March 1982 request, ARCO decided to treat DOE's silence as a denial of its application and appealed to the OHA. R. at 1. On February 1, 1991, OHA upheld DOE's constructive denial of ARCO's request, R. at 549–75, prompting ARCO to bring the present action challenging the OHA decision.

## II. *Standard of Review*

█ The scope of review to be exercised by the Court is limited. *Thriftway Co. v. DOE*, 867 F.2d 1577, 1580 (Temp.Emer.Ct. App.1989) (citing *City of Long Beach v. DOE*, 754 F.2d 379, 385 (Temp.Emer.Ct. App.1985)). "Congress having authorized administrative control in the DOE, the judicial role requires approval of the DOE's decision if there is a rational basis for it."

---

**5.** Sinclair Oil Corporation, one of the original members of the Van Vranken class, opted out of the class action and brought a separate complaint against ARCO, which was later consolidated with the *Van Vranken* litigation.

Both the Van Vranken class and Sinclair Oil have joined as intervenor-defendants in the present action. At oral argument, counsel for Sinclair represented that Sinclair had reached a settlement with ARCO, and argument on behalf of the intervenor-defendants was presented by counsel for the Van Vranken class.

**6.** In the footnote accompanying this passage from *Van Vranken*, TECA noted that "[i]f Arco thought the DOE erred in not granting the company permission to retroactively reallocate its costs, ARCO could presumably have brought an action appealing the DOE's decision." 890 F.2d at 424 n. 2.

*Id.* The limited scope of review is reflected in the standard of review set forth in the EPAA and ESA:

> [N]o order of [DOE] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.

ESA, 12 U.S.C. § 1904 note, incorporated by reference into the EPAA, 15 U.S.C. § 754(a)(1); *see Thriftway*, 867 F.2d at 1580. The Court must give "great deference" to DOE's interpretation of its regulations based upon its recognized expertise and upon the difficulty of judicial administration of complex programs dealing with the petroleum industry. 867 F.2d at 1580–81.

ARCO argues that OHA's decision in this matter was procedural and that procedural decisions are entitled to less deference than substantive decisions. The Court is not persuaded by ARCO's argument. ARCO analogizes OHA's decision to that in *Amoco Corp. v. DOE*, 912 F.2d 472 (Temp. Emer.Ct.App.1990), in which the OHA held that an application for a refund of overcharges for petroleum products was untimely and was subject to dismissal under DOE regulations. *Id.* at 477. Unlike the decision in *Amoco,* the decision of the OHA in this case cannot clearly be characterized as a procedural decision.[7] The standard of review having been set out by the statutes creating the federal petroleum price control scheme, the Court finds no reason to adopt a different standard of review based upon the facts of this case.

### III. *The OHA Decision and ARCO's Challenges*

ARCO brings several challenges to the OHA decision. ARCO contends that OHA's decision was based upon a clear error of judgment and was not supported by evidence in the record. ARCO also claims that DOE is estopped from denying its application to reallocate costs.

### A. Good Cause

DOE regulations provide that "DOE will routinely accept submissions or refiling of [cost allocation] reports only within one year after the original filing or submission." 10 C.F.R. § 212.126(d)(1). However,

> [n]otwithstanding the provisions of paragraph (d)(1) of this section, a refiner may resubmit or refile reports until June 1, 1979, for months of measurement beginning with September 1973; where expressly authorized by DOE regulation or order; *or where DOE grants written permission to resubmit or refile for good cause shown.*

*Id.* § 212.126(d)(2) (emphasis added). In its February 1, 1991 decision, OHA found that ARCO had not established good cause to resubmit its RMCARs. R. at 565–71. ARCO argues that this finding was a clear error of judgment and must be set aside.

First, ARCO argues that the invalidation of the amended V factor by the *Mobil* decisions created good cause for refiling. To hold otherwise, ARCO contends, would permit refiners to file RMCARs which utilize an illegal cost allocation formula. As OHA correctly noted, however, this argument was previously raised and rejected by TECA in *Van Vranken.* R. at 566. *Van Vranken* expressly held that the *Mobil* decisions did not require or permit ARCO to reallocate its costs. 890 F.2d at 423–24. TECA further held that resubmission would be required only if past cost allocations were illegally in excess of the price ceiling, which ARCO's RMCARs were not. *Id.* at 423. The OHA thus correctly concluded that the *Mobil* decisions, standing alone, did not create good cause for the refiling of ARCO's cost allocation reports.

Second, ARCO argues that OHA improperly interpreted *Van Vranken* to hold that OHA "should accord no weight to the *Mobil* decisions in determining whether 'good

---

**7.** The Court also notes that although TECA in *Amoco* states that courts may exercise more independent judgment when reviewing DOE procedural decisions, it ultimately holds that such decisions are to be reviewed under the traditional "arbitrary and capricious" and "abuse of discretion" standards, which accord substantial deference to the OHA. *See* 912 F.2d at 475.

cause' exists for the refiling which ARCO seeks." R. at 566. It is unclear what OHA meant when it stated that it would give "no weight" to the *Mobil* decisions. Obviously, the *Van Vranken* opinions and ARCO's application for cost reallocation found their bases in the *Mobil* trilogy, so it cannot be said that the *Mobil* litigation could be completely ignored by OHA. Rather, the Court finds that OHA's use of the phrase "no weight" simply implies what *Van Vranken* and the OHA correctly held—that the *Mobil* decisions did not establish *per se* good cause for refiners to resubmit cost allocation reports. Although ARCO would have the Court make a greater issue out of OHA's use of the phrase "no weight," implying that OHA had called into question the continued validity of the *Mobil* decisions, the Court finds instead that OHA has properly interpreted and applied the *Mobil* decisions in accordance with the opinion of TECA in *Van Vranken.*[8]

■ Third, ARCO contends that OHA committed a clear error of judgment by failing to accord weight to DOE's acquiescence to use of the unamended V factor after the *Mobil III* decision. ARCO contends that following *Mobil III,* DOE began using the unamended V factor in settlement negotiations with refiners. These negotiations were intended to resolve all enforcement matters between DOE and petroleum refiners. Settlement of enforcement matters between DOE and ARCO was ultimately resolved by a Consent Order entered into March 1, 1985. *See* 50 Fed.Reg. 8366 (Mar. 1, 1985). ARCO claims that DOE's use of the unamended V factor in settlement negotiations and the Consent Order led it to believe that DOE had accepted use of the pre–1974 factor for all purposes and that resubmission of corrected RMCARs was rendered unnecessary.

OHA, however, reached a different conclusion as to the effect of the DOE enforcement decisions on ARCO's ability to retroactively reallocate costs. OHA characterized DOE's use of the unamended V factors as "only a point of compromise to move settlement negotiations forward." R. at 569. OHA also found that DOE's "settlement practices and the policy objectives of the refiling regulations are completely separate." *Id.* OHA concluded that DOE's settlement position did not excuse ARCO from compliance with formal refiling procedures, which required written permission from DOE prior to reallocation of costs. *Id.* OHA found support for this conclusion in the *Van Vranken* decision, which held that "[n]othing in the invalidation of the 1974 amendment had any effect on the refiling regulations and nothing in the refiling regulations excepts refiners from compliance when an allocation regulation is invalidated." 890 F.2d at 424.

ARCO disputes OHA's finding that DOE's use of the unamended V factor was a mere "point of compromise." It also disputes that compliance with refiling regulations was necessary following invalidation of the 1974 amendment. The Court, however, is not free to replace OHA's conclusions with its own if the OHA decision had a rational basis. The Court finds that OHA's decision did have a rational basis. OHA properly interpreted and applied the holding of *Van Vranken* and the published DOE regulations. The Court finds that OHA's decision was not a clear error of judgment and it will uphold OHA's finding that no good cause existed for ARCO to reallocate its costs based upon DOE's alleged acquiescence to use of the pre–1974 V factor.

**B. Due Care and Diligence**

■ OHA's denial of ARCO's request to refile based upon lack of good cause effectively disposed of ARCO's application. The Court has found OHA's ruling to have a rational basis and upholds that portion of OHA's decision. OHA also denied ARCO's application on alternative grounds, which

---

**8.** The Court also notes that TECA found ARCO to have waived its right to relief by not challenging the amended V factor in a timely manner. *Van Vranken,* 890 F.2d at 424. Assuming that OHA gave no weight to the *Mobil* decisions, OHA's actions were not necessarily in error in light of the language from *Van Vranken,* which suggests that ARCO was not at liberty to take advantage of the invalidation of the amended V factor by the *Mobil* decisions.

the Court also finds to have a rational basis. DOE regulations provide that

> [i]n any application for permission to resubmit or refile a report pursuant to paragraph (d)(2) of this section, DOE will not make a finding of good cause routinely. *Where it appears that such a finding may adversely affect the interest of the consuming public,* a firm must demonstrate in its application, at a minimum, that *the claimed errors or omissions* in the report or reports which the firm seeks to replace or modify *did not result from a failure to exercise due care and diligence.*

10 C.F.R. § 212.126(d)(3) (emphasis added). OHA found that ARCO failed to establish that it had exercised due care and diligence in filing its RMCARs. Specifically, OHA found that ARCO had failed to appeal the 1982 rejection of its application to refile its RMCARs and that, although the Van Vranken litigation had been pending since 1979, ARCO did not diligently pursue formal approval for its amended RMCARs until the present appeal to OHA.

ARCO argues that OHA's invocation of the "due care and diligence" requirement to reject its application was erroneous. First, ARCO claims that § 212.126(d)(3) applies only when there may be an adverse effect on the interest of the consuming public. Because the Van Vranken class consists of resellers, not consumers, ARCO argues that the "due care and diligence" requirement is not applicable to this case.

This same argument was raised in the proceedings below and rejected by OHA. OHA noted that due care and diligence requirement is invoked when the desired cost reallocation "may" adversely affect the interest of the consuming public. Because this interest is defined neither by statute nor by regulation, OHA was forced to determine whether reallocation of costs by ARCO would cause the type of adverse effect proscribed by § 212.126(d)(3). OHA concluded "that the phrase 'interest of the consuming public' should be broadly construed to embrace the policy objectives of the EPAA, pursuant to which the regulation was promulgated." R. at 572. OHA

noted that one of these policy objectives is "equitable distribution of ... refined petroleum products at equitable prices among all ... sectors of the petroleum industry." *Id.* (quoting 15 U.S.C. § 753(b)(1)(F)). OHA found that the interest of the consuming public was broad enough to encompass the interest of petroleum resellers in avoiding overcharges for petroleum products purchased. Because ARCO's request to reallocate costs would frustrate the resellers ability to recover overcharges, OHA found that the "due care and diligence" requirement of § 212.126(d)(3) should apply to ARCO's application for resubmission of its RMCARs.

■ Once again, the Court encounters a situation in which it must properly grant deference to the OHA's decision. Deference is especially appropriate in this instance, in which the agency charged by Congress to administer a statutory scheme has interpreted the statute and its accompanying regulations in light of their underlying policies and enforcement objectives. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). OHA's interpretation and application of DOE regulations must be accorded substantial deference by the Court in recognition of OHA's recognized expertise in administration of the petroleum price control program. *See Thriftway,* 867 F.2d at 1580; *Mountain Fuel Supply Co. v. DOE,* 656 F.2d 690, 694–95 (Temp. Emer.Ct.App.1981); *cf. MGPC, Inc. v. DOE,* 763 F.2d 422, 430–31 (Temp.Emer.Ct. App.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985). The Court finds that OHA's interpretation of § 212.-126(d)(3) has a rational basis, and the Court cannot substitute its own interpretation of the regulatory provision for that of OHA. Thus, the Court upholds OHA's ruling that § 212.126(d)(3)'s due care and diligence requirement applies to ARCO's request for resubmission.

■ Second, ARCO contends that if the due care and diligence requirement is applicable, ARCO has fulfilled it. ARCO argues that its desire to amend its RMCARs

resulted from a change in the law brought about by the *Mobil* decisions and not from a lack of due care or diligence. ARCO again argues that DOE's acceptance of its unamended V factors in the Consent Order led ARCO to believe that formal refiling and acceptance of its RMCARs was unnecessary. ARCO contends that DOE's post-*Mobil III* conduct led it to conclude that an appeal from its March 1982 reallocation request was not required.

The Court agrees with OHA's finding that ARCO did not exercise due care and diligence in seeking approval for its retroactive cost reallocation. ARCO obviously was aware of its obligation to secure DOE approval prior to reallocating its costs, as evidenced by its repeated attempts to gain such approval in 1980 and 1981. ARCO can point to no circumstances which would justifiably lead it to conclude that compliance with published DOE regulations was no longer necessary. Although ARCO places great reliance upon its Consent Order with DOE, that Order was not entered until 1985 and did not purport to affect rights and liabilities under the private enforcement mechanisms of the ESA and the EPAA nor to supersede DOE cost reallocation regulations.[9] The *Van Vranken* litigation commenced in 1979, prior to the Consent Order and prior to the *Mobil II* and *Mobil III* decisions. Significantly, in 1983 ARCO was party to a case in which TECA decided that DOE regulations prevented retroactive reallocation of costs without written approval from DOE. *Eastern Air Lines, Inc. v. Atlantic Richfield Co.*, 712 F.2d 1402, 1408–09 (Temp.Emer. Ct.App.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 278, 78 L.Ed.2d 258 (1983). In light of this sequence of events, the failure of ARCO to receive formal reallocation approval as required by DOE regulations, and

the holding in *Eastern Air Lines*, ARCO cannot credibly argue that it was misled into believing that it was not required to obtain written approval from DOE prior to reallocating its costs. OHA's finding that ARCO failed to exercise due care and diligence by neglecting to appeal DOE's failure to respond to its March 1982 reallocation application is rational and supported by the evidence. The Court agrees with OHA's finding and will not set it aside.

## C. Evidence in the Record

ARCO argues that the OHA decision must be set aside because OHA made at least three findings that are unsupported by the evidence in the record. First, ARCO claims that OHA's finding that DOE had not acquiesced to ARCO's use of the unamended V factor was based upon assertions of counsel at oral argument and not upon evidence in the record. Second, ARCO claims that OHA's finding that ARCO's refiling of its RMCAR may affect the consuming public was not based upon any evidence. Third, ARCO argues that OHA had no basis upon which to conclude that ARCO should have foreseen the need to gain formal DOE acceptance of its amended RMCARs rather than merely relying upon DOE's perceived acquiescence to the use of the unamended V factor.

ARCO's two latter arguments raise issues previously addressed by the Court and will not be dealt with at length again. The Court has discussed OHA's responsibility to interpret provisions of DOE regulations and the evidence showing that ARCO could not justifiably have concluded that formal DOE approval was not required prior to cost reallocation. The Court also notes that OHA's findings as to how best to protect the interests of the consuming public is not purely a factual question, but

---

**9.** The 1985 agreement provided that "this Consent Order settles and finally resolves all aspects of ARCO's liability, if any, *to DOE* under the Federal Petroleum Price and Allocation Regulations ..." Consent Order ¶ 502(b), *reprinted at* 50 Fed.Reg. 8366, 8373 (Mar. 1, 1985) (emphasis added). The Consent Order further provided that

> [n]othing contained herein may be construed as a bar, an estoppel, or a defense against any

criminal action, or against any civil action brought by any purchaser of covered products from ARCO, ... [T]his Consent Order does not affect or prejudice any private action brought by a third party against ARCO, or by ARCO, against any third parties, including an action for contribution.

*Id.* ¶ 502(c).

rather it involves questions of interpretation of DOE regulations and enforcement policies. Although the Court finds a rational basis for OHA's conclusion that the interests of the consuming public are implicated by the facts of this case, the Court also finds it to be improper to review OHA's decision upon the "unsupported by evidence" standard urged by ARCO.

Although the Court has not expressly addressed ARCO's first contention, it has previously set forth the evidence showing that ARCO was or should have been aware of its obligation to secure written DOE permission to refile its cost allocation reports. Based upon the presence of objective evidence in the record, the Court finds ARCO's claim that OHA relied solely upon the statements of counsel at oral argument to be without merit.

### D. Estoppel

■ ARCO argues that DOE is estopped from denying ARCO permission to amend its RMCARs based upon its conduct indicating acquiescence to use of the unamended V factors. ARCO claims that following *Mobil III*, DOE followed a general practice of allowing refiners to claim increased costs based upon the unamended V factors. ARCO also contends that DOE used the unamended V factor in reaching its Consent Order with ARCO. ARCO claimed that it relied to its detriment upon DOE's conduct, which it claims led it to believe that the unamended V factor would be acceptable for all purposes.

Again, the Court has previously addressed the issues raised by ARCO's allegations. As previously noted, the Court finds that ARCO had reason to know that it had to comply with the published DOE regulations and obtain written DOE permission to reallocate costs, and that the actions of DOE following *Mobil III* and during settlement negotiations did not relieve ARCO of those preexisting obligations. The Court finds that ARCO's reliance upon DOE's conduct was unwarranted, and it does not find that DOE is estopped from denying ARCO's request for reallocation.

### IV. *Conclusion*

For the foregoing reasons, the Court will deny ARCO's motion for summary judgment and grant the cross-motions of the defendants and intervenor-defendants for summary judgment.